STEPHEN E. ROBERTS

*v.*

JAMES T. APPLEGATE.

*Filed at Springfield October 30, 1894.*

1. WARRANTY—*of breeding horse sold by catalogue.* Statements in a catalogue, to which a buyer was referred, that an English stallion was bought of one "Mendon," the English breeder, and registered as "Young Wonder," are substantially fulfilled if the stud-book shows the breeder's name as "Mendham" and that of the horse as "Wonder of the East," it appearing there was no fraud, and that the purchaser long acquiesced, and paid interest on the notes given for the horse, without complaint.

2. SAME—*opinion and prediction distinguished from warranty.* The statement in a dealer's catalogue of breeding horses, referred to by such dealer in making sale, that a young and untried stallion would "make his mark as a foal-getter," is a mere opinion and prediction, and does not amount to a warranty.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Hancock county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

Defendant in error brought his bill of complaint in the Hancock circuit court December 5, 1890, to foreclose a mortgage given by plaintiff in error April 5, 1883, to secure two promissory notes of the same date, for $750 each, given by the latter to the former, and payable, one in one year and the other in two years, with interest at six per cent. Roberts set up in his answer that the notes were given for a stallion purchased by him of Applegate for the price of $1500, and that as a part of the contract of purchase Applegate represented to and contracted with Roberts that the stallion was a pure-bred registered English shire-horse, recorded and registered under the name of "Young Wonder, No. 2957," in volume 4 of English Cart-Horse Stud-Book, and was an ordinarily sure foal-getter, and a good, sure horse for breeding purposes, and

perfectly sound in body and limb; that he, Roberts, bought the stallion for breeding purposes, and did not propose to buy any other kind than a full-blooded recorded English shire-stallion, and that Applegate well knew that fact; that the warranty was broken, and by reason thereof the value of the horse was much lessened, and he was worth not to exceed $100.

On coming in of the answer, complainant amended his bill, setting up the claim of warranty and denying it, and alleging that if such warranty was made it was not in writing, and was made more than five years before suit, and so barred by the Statute of Limitations, which statute complainant insisted on. Amended answer was filed, alleging that the warranty was in writing, and signed by the complainant. On replication being filed, hearing was had, and the circuit court rendered its decree for the complainant for the full amount due on the notes, and Roberts took the cause on error to the Appellate Court for the Third District, where the decree was affirmed, and he then sued out this writ of error for the reversal of the decrees of the Appellate and circuit courts.

Messrs. PATTON, HAMILTON & PATTON, Messrs. BAILEY & HOLLY, and Messrs. O'HARRA, SCOFIELD & HARTZELL, for the plaintiff in error:

Perhaps, under ordinary circumstances, these representations would have amounted to merely admissible dealer's puffing, but under the special circumstances of this case, when by special reference they are incorporated in and made a part of the contract, where the representations therein contained are of the essence of the contract, they certainly amount to more, and rise to the dignity of a warranty. *Behn* v. *Burness*, 3 B. & S. 751; *Aultman & Co.* v. *Weber*, 28 Ill. App. 91; *Wilcox* v. *Carson*, 29 id. 70; *Sparling* v. *Marks*, 86 Ill. 125.

Applegate, being cognizant that Roberts wanted a breeding horse, must be taken as warranting the horse as

reasonably fit for that purpose. *Cemetery Ass.* v. *Smith*, 32 Ill. 252; *Randall* v. *Newson*, 2 Q. B. Div. 102; *Hide and Leather Co.* v. *Reissig*, 48 id. 75; *Walcott* v. *Mount*, 7 Vroom, 262; *Poulton* v. *Lattimore*, 9 B. & C. 259; *Withers* v. *Green*, 9 How. 220; *Brown* v. *Reinholdt*, 41 Ill. App. 599; *Cook* v. *Tavener*, id. 644.

If a man buy an article for a particular purpose, made known to the seller at the time of the contract, and rely upon the skill or judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose. 2 Benjamin on Sales, p. 867, sec. 993; *White* v. *Miller*, 71 N. Y. 118; *Beers* v. *Williams*, 16 Ill. 69.

The cause of action was not rendered invalid by the payment of interest. *Wheelock* v. *Berkley*, 38 Ill. App. 519.

Messrs. Neece & Son, for the defendant in error:

The statement in the catalogue, "he will attract attention anywhere, and make his mark as a foal-getter," is a mere expression of opinion. *Fauntleroy* v. *Wilcox*, 80 Ill. 477; *Misner* v. *Granger*, 4 Gilm. 69; *Towell* v. *Gatewood*, 2 Scam. 22; *Adams* v. *Johnson*, 15 Ill. 345; *Iron Works* v. *Moore*, 78 id. 65.

There cannot be an express and an implied contract or warranty on the same subject at the same time. *Walker* v. *Brown*, 28 Ill. 378; *Nichols* v. *Guibor*, 20 Ill. 285.

Mr. Justice Carter delivered the opinion of the court:

The only question involved in this case is, whether or not Applegate warranted that the stallion, for which the notes were given, was a pure-bred English shire-horse, registered as and entitled to the name and number of "Young Wonder, No. 2957," and was an ordinary foal-getter.

Roberts testified, in substance, that he went to Applegate, who had a number of imported horses, and told him he wanted an imported, straight-bred, registered horse;

that Applegate showed him the horse in question, and represented him as a highly-bred horse of his class; that Applegate said he had imported that horse, and he was a straight-bred, registered horse; that after the trade was made, but on the same occasion, he, Roberts, asked Applegate for the pedigree, and Applegate delivered him a catalogue marked "Catalogue of English Cart and Shire-Horses and Mares, * * * imported by James T. Applegate, Macomb, McDonough county, Ill.," containing the name of the horse in question as "Young Wonder;" that he asked Applegate about the horse being a sure foal-getter, and Applegate replied that there was no doubt about that—that the catalogue contained all that was necessary for him to say on that subject as well as the other; that the horse would come out in volume 4 of the English Cart-Horse Stud-Book. He further testified that he did not see the catalogue until the bargain was made, when he called on Applegate for the pedigree, but that he read over the catalogue before executing and delivering the notes and mortgage. It was proved on behalf of Roberts that two-thirds of the value of such a horse consisted in his being registered; that if not registered he would not have been worth more than $500, and if not an ordinarily sure foal-getter, much less.

Applegate testified that Roberts asked him at the time he purchased the horse if he would warrant the horse, and he replied that he would not, for the reason that the animal was a colt and had never been used as a stock horse, and that Roberts bought him without any warranty; that before the trade Roberts asked him about the pedigree of the horse, and he replied that he would be recorded in volume 4 of the English Shire-Horse Stud-Book; that he had bought him of a man named Mendon, (spelled Mendham in the catalogue,) of St. Edmonds, Lincolnshire, England, and had given to the secretary of the stud-book the pedigree furnished by Mendon, and paid him for recording the horse, and that his number would be 2957; that Rob-

erts had paid the interest on and procured extensions of the notes, up to 1890, without ever having mentioned any warranty or made any complaint about the horse, and that he never heard of the claim of warranty until this suit was brought.

Volume 4 of the stud-book, given in evidence, showed the pedigree of the colt substantially as represented ; that his number was 2957, but the name there given was "Wonder of the East" instead of "Young Wonder." It was further shown by the evidence the horse was in fact purchased by Applegate of R. Mendon, at St. Edmonds, Lincolnshire, England, and the only apparent breach of warranty on this branch of the case, if any warranty was made, was, that the name of the horse appeared in the stud-book as "Wonder of the East" instead of "Young Wonder," and that the name of the man from whom he was purchased was Mendon, instead of Mendham, as stated in the catalogue. But it was shown that Applegate in good faith gave the name of the animal "Young Wonder," as stated in the catalogue, to the secretary of the society for registration, and believed it would so appear in the stud-book, and that Roberts knew of the discrepancy in the name of the horse several years before the suit was commenced, and paid interest on the notes without complaint ; that he had traded the horse for another, furnishing the information, at the time of such trade, that the horse's name in the stud-book was not "Young Wonder" but "Wonder of the East." The party who had traded with Roberts for the horse also testified that Roberts told him that when he got the horse from Applegate he got no guaranty with him, and that was the reason he did not take him back, and in this he was corroborated by another witness.

We cannot regard the mis-spelling of Mendon's name in the catalogue as of any importance, and it is difficult to believe from the evidence that Roberts attached any importance to the discrepancy between the name of the.

horse as given in the catalogue and the one given in the stud-book, or suffered any damages on account of it. If he did, it is somewhat singular that he paid interest on these notes and procured extensions of time in which to pay the principal, for so many years, without making any complaint to Applegate.

But it is contended by counsel for plaintiff in error, and many authorities are cited to support their contention, that the statement in the catalogue, "he will attract attention anywhere, and make his mark as a foal-getter," coupled with the other evidence, amounted to a warranty by Applegate that the horse was, or would prove to be, an ordinarily sure foal-getter, and that a breach of such warranty was clearly proved. We are unable to agree with counsel as to either the evidence or the law on this branch of the case. Nor do the cases cited, as we read them, sustain the view contended for. True, it was proved that the horse was not a sure, or an ordinarily sure, foal-getter, and that his value was diminished accordingly. But was there any warranty? We think not. It was not denied by Roberts that the horse was barely three years old at the time of the purchase, and that Applegate told him the animal had never been used as a stock horse, and as we read the evidence, aside from the printed statement in the catalogue, the preponderance is to the effect that both parties understood at the time of the purchase that there was no warranty. The statement in the catalogue that the horse would "make his mark as a foal-getter" did not amount to a warranty, but was a mere expression of belief or opinion that the animal would turn out to be a good foal-getter. Roberts had seen the horse, and it does not appear that Applegate knew any better than he the qualities of the animal in this respect. It was permissible for the seller to extol the qualities of the horse to the buyer, and his predictions as to what the horse would turn out or prove to be in the future, cannot, in the absence of fraud, be construed into a warranty. (*Adams* v. *Johnson*, 15

Ill. 345 ; *Kohl* v. *Lindley,* 39 id. 195 ; *Hanson et al.* v. *Busse,* 45 id. 496 ; *Kenner* v. *Harding,* 85 id. 264.) In the latter case this court said : "In determining whether there was in fact a warranty, the decisive test is, whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge, and on which the buyer may be expected, also, to have an opinion and to exercise his judgment. In the former case, there is a warranty; in the latter, not. (Benjamin on Sales, 454.) And this is substantially the rule recognized by this court in *Adams* v. *Johnson,* 15 Ill. 345." Nor have we been able to find in the record any evidence of fraud on the part of defendant in error.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*