## Central Commercial Company, Appellee, v. The Lehon Company, Appellant.

## Gen. No. 17,121.

1. SALES—*evidence of warranty.* Where a vendee alleges that an express warranty was made that a certain flux was as good as another brand and would do the work equally as well, and the contradicted evidence offered by him shows that the agent for the flux in question stated it would do the work of saturation as well as such other brand and that the vendee purchased a car of such flux, on condition that it was guaranteed to do the work as well as such brand, it is not "clearly manifest" that the parties intended an express warranty.

2. SALES—*expression of opinion or "puffing" does not constitute.* Mere matters of opinion between parties dealing upon equal terms or "puffing" a commodity do not constitute a warranty.

3. AGENCY—*authority of agent to warrant commodity sold.* That an agent had authority to warrant that a certain flux was as good and would do the work as well as another named brand, is not established where the evidence merely establishes the fact of the agency.

4. AGENCY—*what authority implied from.* The only authority that is implied from the mere fact of agency to sell is to sell in the usual manner, and only in the usual manner in which goods or things of that sort are sold.

5. SALES—*implied warranty of fitness for purpose.* In the bargain and sale of an existing chattel there is no implied warranty of fitness for the purpose intended, in the absence of fraud.

6. SALES—*implied warranty of fitness for purpose.* Where a manufacturer undertakes to supply an article for a special purpose, and the buyer has a full opportunity for inspection, there is no implied warranty of fitness for the purpose intended.

7. SALES—*implied warranty of fitness for purpose.* There is no implied warranty of fitness for the purpose intended in the sale of an article by sample.

Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; EDWARD W. EVERETT and J. SIDNEY CONDIT, of counsel.

ELBRIDGE HANECY and WILLIAM A. ROGAN, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

Appellee sued appellant for the price of certain roofing materials sold and delivered, and recovered a judgment for $1,791.20. Upon the trial before the court without a jury, appellant interposed a set-off, claiming damages in excess of appellee's claim, for an alleged breach of warranty as to a part of the materials sold. The trial court disallowed the set-off and the only question raised by this appeal is as to the correctness of that finding.

It appears from the evidence that in 1907, appellant was engaged in manufacturing felt roofing and appellee was in the business of selling rosin, asphalt and other roofing materials. The latter had in its employ as a salesman, one Wright, who had previously been employed in a like capacity by the Standard Asphalt & Rubber Company, a Kansas corporation. While with the Kansas company, Wright had made sales to appellant of an asphaltic composition known as "Sarco," manufactured by that company, and appellant had been using the same, in combination with rosin, wax tailings and asphaltum, to make a "saturating" fluid with which its felt roofing was impregnated. Appellant's process of manufacturing roofing was as follows: A strip of wool felt was placed for a minute or two in a tank containing the "saturating" compound and was then forced between steam-heated rollers, which dried the felt and pressed

out the surplus fluid. The saturated felt then received a coating composed of "candle tar pitch" and asphaltum; and when partially cooled, it was sprinkled with powdered soapstone to prevent sticking and then made into rolls for shipment. The saturating and coating compounds were "trade secrets," each manufacturer having his own formulae. Appellant's general manager, Lehon, testified that in the manufacture of some kinds of roofing light oil can be used, while in other kinds it cannot be used; that "we use a coating in our roofing which will not admit of light oil, * * * because free oils would come through the coating; * * * if there is a light oil in the saturation and it comes through the coating, it eats up the soapstone, the whole mass will stick together and it becomes worthless."

Appellant's witnesses testified that early in June, 1907, Wright called upon Lehon and said that he had left the employ of the Standard Company, and was employed by appellee, who had acquired asphalt lands in Kansas, and he could sell a flux similar to "Sarco" at a lower price than appellant had been paying for that material; that Lehon told Wright to submit a sample and he would take the matter under advisement; that a week or ten days later Wright submitted a sample in a can; that Lehon and his superintendent, Sullivan, examined the sample; that Sullivan then said: "Wright, I am afraid of this flux; it has too much oil in it;" that an argument ensued between Wright and Sullivan during which Wright said that "he knew what appellant was using Sarco for, and this was the same type of material, coming from the same place and would do the work of saturation just as well as Sarco;" that "it was every bit as good, and will do the work just as well as the other;" also that he had a car load of it in transit, and "to get even with the Standard, who hadn't treated him right, he would make a price of $19 a ton;" that appellant was then paying $23 a ton for Sarco; that Lehon then said: "If it is

as good as Sarco, and will do the work equally as well, I will take a car;'' that appellee thereupon by letter acknowledged receipt of an order ''for one car load of heavy asphalt flux as per sample submitted;'' and soon after shipped a car load containing 119 barrels, to appellant, billing it as ''asphalt oil;'' that appellant used about half of the car load at once and without further examination, in the manufacture of roofing, using it in the same manner and in the same proportions as Sarco had been used, and shipped the product to its customers, but was obliged to take back most of it because it had become sticky and worthless, causing a loss to appellant of $5,800; that the remaining half of the car load was returned to appellee, who credited the price thereof on appellant's account; that chemical analysis subsequently made showed that the material delivered, while but slightly different from the sample submitted, was about one-third petroleum oil and that Sarco contained no such oil.

On behalf of appellee, Wright testified that when he solicited Lehon and Sullivan to buy his product, nothing was said about ''Sarco,'' or ''Kansas flux;'' that he merely submitted a sample and told them the price would be $22 a ton; that Lehon then said he could not afford to pay $22 a ton, but would give $19 a ton for it; that Wright submitted this offer to appellee, who accepted it with the qualification that the empty barrels should be returned; that Wright then told Lehon to make a thorough test of it, and if they did not want to keep it, he would take it back. He also testified that all the material delivered was the ''same as sample.'' He also denied that he had said that his material came from Kansas, or that he ''had a car load in transit;'' that, in fact, the material sold was made by appellee, under his direction, in Chicago, and at the time he submitted the sample, only about one-third of a car load had been manufactured.

An attempt was made by appellant to show that Wright was familiar with its methods of manufactur-

ing roofing and knew its compounding formulae. Wright denied this, however, and we think appellant's theory, in this respect, was not sustained by a preponderance of the evidence.

Appellee also produced several witnesses, roofing manufacturers, who testified that they had successfully used the same product, taken from the barrels returned by appellant; that in their opinion, the "sticky" condition complained of by appellant, was due to the use of pitch in appellant's coating compound, and that the trouble was caused by the manner of using the flux, and not to any defect or unsuitableness in the material supplied.

Upon this evidence, appellant's counsel contend (1) that the alleged statement of Wright to the effect that his material was "a Kansas flux, as good as Sarco, and would do the work equally as well," was an express warranty; (2) that a sales-agent has implied authority to bind his principal by such a warranty; and (3) that there was also an implied warranty that the material supplied was reasonably fit for the purpose to which Wright knew it was to be applied. We are of the opinion that none of these contentions is sound.

In Adams v. Johnson, 15 Ill. 345, it was claimed that a representation by a vendor, in selling a patented shingle machine, that it "would manufacture shingles without checking or splitting them," was an express warranty. The court held that this statement was not a warranty, but was a mere expression of opinion as to the quality or character of the article sold. The court there said (p. 346):

"Should every expression of opinion upon the sale of an article be held to create a warranty, proof would not be wanting in almost every instance of the sale of chattels to establish a warranty; for but few articles are sold where the vendor does not praise his wares, and such encomiums are generally understood by purchasers as they are intended by the sellers.

Where a warranty is intended, something more than this is done, and the intention of the parties is clearly manifest to that effect.''

We do not think it is ''clearly manifest'' from the evidence in this case that Wright intended by anything he is alleged to have said, to warrant that his material would accomplish the same results as Sarco when used in the same manner as Sarco. Apparently Wright only knew that Sarco was used as part of a saturating compound; and in one version of the conversation, Lehon testified that Wright said that his product would ''do the work *of saturation* as well as Sarco.'' Lehon also testified that appellant's coating compound ''would not admit of the use of light oil;'' but he did not tell this to Wright, and there is no evidence tending to show that Wright knew that fact. Nor does it appear that Lehon or Sullivan inferred, or could reasonably infer, from anything Wright is alleged to have said, that Wright intended to assert as a fact, from any knowledge or past experience, that his product had ever been used, or could be used, in all respects as a substitute for Sarco. On the contrary, the only reasonable inference is that Wright was ''puffing'' his own commodity, and, in the argument, gave his opinion as to what it would or might do. It is true that Lehon testified that he then said to Wright ''If *you will guarantee* it will do the work as well as Sarco, I will buy a car;'' but the other two of appellant's witnesses who were present, do not include the words italicized in their version of the conversation.

In Roberts v. Applegate, 153 Ill. 210, in discussing an alleged warranty in the sale of a horse, the court said, quoting from the case of Kenner v. Harding 85 Ill. 264:

''In determining whether there was in fact a warranty, the decisive test is, whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge, and on

which the buyer may be expected, also, to have an opinion, and to exercise his judgment. In the former case there is a warranty; in the latter, not. (Benjamin on Sales, 454)."

The same rule is given on Mechem on Sales, Sec. 1243, where it is further stated that the question whether the seller in such cases assumes to state a fact or merely his opinion is a question for the jury to decide, if the facts are disputed.

In Fuchs & Lang Co. v. Kittredge, 242 Ill. 88, the trial court refused to hold, as a proposition of law, that "if the plaintiff, through his agent, made a distinct assertion of the kind or quality of the machine * * * which he knew or should have known to be untrue, with a view of inducing the defendant to enter into the contract, and the defendant relied upon that assertion and believed it to be true and by reason thereof did execute the contract, then the defendant had the right to reject the machine." In affirming the action of the lower court, the Supreme Court said, (p. 95):

"The false representation which can be made the basis of an action or the recission of a contract, where there is no relation of confidence, must be of a material fact. Matters of opinion between parties dealing upon equal terms, though falsely stated, are not relieved against. Exaggeration in the commendation of articles offered for sale will not avoid a contract. * * * Under this proposition, *if appellant's agent had asserted that its machine was superior in quality to the one appellant had been using—essentially a matter of opinion*—and it had turned out to be false, the contract would have been avoided. The proposition was not a correct statement of the law."

But if it be conceded that the language used by Wright at the time of the sale amounted to a warranty that the material sold could be successfully used as a substitute in all respects for Sarco in the manufacture of appellant's roofing, it does not appear from the evidence that Wright had authority to bind appellee by such a warranty. The only evidence claimed by

appellant's counsel as tending to show such authority consists in the admitted fact that Wright had authority from appellee to sell its wares, and the evidence of one witness that it was customary in the trade, as to goods sold by sample, to give a warranty *of uniformity and that the goods delivered should be equal to the sample.* The warranty claimed to have been given by Wright was not one merely of uniformity and that the goods should be equal to the sample but was much broader. The only authority that is implied from the mere fact of agency is "to sell in the usual manner, and only in the usual manner in which goods or things of that sort are sold." Ide v. Brody, 156 Ill. App. 479. "The general rule is, as to all contracts including sales, that the agent is authorized to do *whatever is usual* to carry out the object of his agency, and it is a question for the jury to determine what is usual." (Benjamin on Sales, Sec. 624). We think the only authority Wright had, under the evidence, was to warrant the goods delivered to be equal to the sample. The analysis of the goods delivered, made by a chemist employed by appellant, fails to show any material difference between the sample and the goods delivered; and it is not claimed—nor do we think it could be successfully claimed—that the slight difference found by the chemist was the cause of the trouble for which damages were claimed.

As to the claim of an implied warranty of fitness for the purpose intended, the rule is that in the bargain and sale of an existing chattel there is no such implied warranty, in the absence of fraud. Telluride Power Co. v. Crane Co., 208 Ill. 218. It is undoubtedly the law, as stated by appellant's counsel, that where a manufacturer undertakes to supply an article for a special purpose, which purpose is communicated to the seller, and the buyer, without having an opportunity to inspect the article, orders it in reliance on the seller's skill, judgment and experience, and not on his own judgment, a warranty of fitness for the purpose spec-

ified will be implied. But where full opportunity of inspection is given, the rule thus stated has no application. Horwich v. Western Brewery Co., 95 Ill. App. 162; Rockford Wholesale Grocery Co. v. Stevenson, 65 Ill. App. 609; Carleton v. Jenks, 80 Fed. Rep. 937, 26 C. C. A. 265; Telluride Power Co. v. Crane, *supra,* 35 Cyc. 410. Nor can there be any implied warranty of fitness where the sale is made by sample, though in such case there is an implied warranty that the goods delivered shall be equal to the sample in kind and quality (35 Cyc. 405).

The judgment of the Municipal Court will be affirmed.

*Affirmed.*