(No. 11900.—Judgment affirmed.)
The Hunt Drainage District, Appellee, *vs.* W. Cole,
Appellant.

*Opinion filed February 20, 1918—Rehearing denied April 4, 1918.*

1. Drainage—*powers of the drainage commissioners under section 28 of Levee act.*   Under section 28 of the Levee act the drainage commissioners may do any act or make any contract not expressly prohibited by the statute which is in furtherance of the general corporate purposes of the drainage district.

2. Same—*under amended section 37 of Levee act commissioners may incur indebtedness for current expenses and levy assessment therefor.*   Under the added powers conferred by the amendment to section 37 of the Levee act the drainage commissioners have the power to incur indebtedness for current expenses and then to levy an assessment to pay such expenses. (*Meridian Line Drainage District* v. *Wiss,* 258 Ill. 600, followed.)

3. Same—*what are the current expenses of a drainage district.*   The current expenses of a drainage district include any continuing, regular expenditure for carrying on the work of the district and also expenses necessarily incurred as incident to the performance of the duties enjoined upon the commissioners and which are required to be performed each year, whether or not the particular work for which the expense is incurred is one which will necessarily occur each year.

4. Same—*expense of making surveys to report nature of work required to be done is a current expense.*   Expenses incurred in making surveys and plans in order to report to the court the nature of the work which the commissioners believe is required to be done in any year in order to afford adequate protection and drainage to the lands are properly included as a part of the current expenses for such year.

5. Same—*when court may approve part of commissioners' contract with surveyors.*   Where drainage commissioners enter into a contract with surveyors which is separable into three parts, the first two covering the surveying of the lands and the making of drainage plans and the third the supervising of construction work planned, the county court, in considering the commissioners' annual report, has power to approve of the first two parts of the contract and reject the third.

6. Same—*when remainder of fund levied for particular purpose may be transferred to general repair tax fund.*   The Levee act does not prohibit drainage commissioners from transferring the unused

portion of a fund levied for a particular ditch to the general repair
tax fund when the money is not needed for the purpose for which
it was levied and there is no injury to land owners by such trans-
fer, as the repair fund is still available if any work on the ditch
is necessary.

7. SAME—*the court may treat the annual report of commission-
ers as prima facie correct.* In considering the annual report of
drainage commissioners under the Levee act the county court may
treat the report as *prima facie* true and place the burden of proof
upon objectors to sustain the allegations of their objections.filed
to such report.

APPEAL from the County Court of Hancock county;
the Hon. E. W. DUNHAM, Judge, presiding.

SCOFIELD, HELFRICH & CALIFF, and JOHN W. WIL-
LIAMS, for appellant.

PLANTZ & LAMET, (O'HARRAS, WOOD & WALKER, and
ANDERSON & MATTHEWS, of counsel,) for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellee, the Hunt Drainage District, was organized in
the county court of Hancock county in 1879 under the act
providing for the construction, reparation and protection of
drains, ditches and levees across the lands of others for
agricultural and sanitary purposes. The district embraces
15,600 acres of land in that county. Appellant, W. Cole,
is the owner of 20 acres of land in this district. On July
30, 1917, the commissioners of the district filed their an-
nual report in the county court of that county in compli-
ance with section 26½ of the Levee act. They also filed
their annual financial report and the report of the treasurer
of the district, as required by section 41 of the act. Ap-
pellant, Cole, and several other land owners, filed their ob-
jections to certain parts of each report. A hearing was
had on the objections, which were sustained in part and
overruled in part and an order was entered approving and
confirming the report of the commissioners in its most es-

sential parts. From this judgment Cole has prosecuted his appeal to this court.

The commissioners reported, among other things, that repeated efforts had been made by them and the commissioners of another district (the Lima Drainage District) to reach an agreement for a combined system of levees and ditches for the better protection and drainage of the lands in the two districts but that no agreement had been reached; that no topographical survey of the lands in the Hunt district had been made and that in their negotiations with the Lima district they were always at a loss to know the relative elevations and other conditions of their district as compared with the Lima district, and had no means of determining the lands and the extent to which such lands would be benefited by any system of drainage that might be adopted; that in their judgment it was necessary such a survey be made of the lands in their district, and to that end they entered into a contract on January 22, 1916, with Randolph & Bushnell, a firm of drainage engineers, to make a topographical survey and maps of the district, for which they were to pay a sum equal to twenty-five cents an acre on all lands of the district covered by the survey; that said firm had commenced to make the necessary survey but had not as yet submitted its report; that they had adopted this course at the request of many of the land owners in the district; that they believed it was to the best interests of the district that engineers experienced in drainage matters should be consulted as to methods of draining and reclaiming such lands, and asked that their action in entering into said contract with Randolph & Bushnell be approved and confirmed by the court.

The contract provides that the engineers shall make a complete topographical survey of all the lands within the district and shall make all necessary designs for drains, ditches, levees, pumps, pumping stations and other work for the complete drainage of the district, and shall also prepare

all necessary specifications and detailed plans, profiles and estimates for the construction of the work contemplated in the plan of drainage and reclamation of the lands; that they shall supervise the construction of the proposed improvement and shall advise with the commissioners in all matters pertaining to the awarding of the contract and construction of the improvement. The contract further provides that the engineers shall be paid for making the topographical survey a sum equal to twenty-five cents per acre on all lands in the district covered by said survey, for making the plans and specifications a sum equal to two per cent of 15/28ths of the total estimated cost of the work to be done in the Hunt and Lima Drainage Districts, and that for the supervising of the construction of the work a sum equal to three per cent of 15/28ths of the estimated total cost of the work in the Hunt and Lima Drainage Districts; that the payment provided for by the contract shall be made from any funds in the hands of the treasurer of said district properly available for such payment, or from the proceeds of any assessment levied or to be levied in said district which may be available for the payment of such services, and that for the purpose of such payment the engineers' services provided for shall be treated as a part of the current expenses of said district.

In their annual financial report submitted under section 41 of the act the commissioners stated that in their annual report they had reported the making of the contract with Randolph & Bushnell as entailing obligations on the part of the district for an amount which they are not able to state at that time; that there are also additional obligations, amounting to a few hundred dollars, which they are not able to itemize at such time; that it is necessary that all of the funds on hand not needed for other purposes be transferred to the repair tax account; that they have on hand the sum of $211.54 as a special benefit fund, which was levied some time ago as a special assessment for the

construction of a certain ditch in the district; that said ditch has been constructed and all labor and materials paid for, leaving said sum as a special benefit fund. They ask that the court enter an order approving and confirming, among other things, their action in making the contract with Randolph & Bushnell, and that they be authorized to pay the amount due thereunder out of any funds available for that purpose, and that they may be authorized to transfer said sum of $211.54 to the repair tax fund, to be used by the district for the purpose of a repair tax fund.

Several lands owners, including appellant, Cole, appeared and filed objections to that portion of the report in which the commissioners asked the court to approve their action in entering into the contract with Randolph & Bushnell and to that portion in which they asked to be authorized to transfer the $211.54 from the special benefit fund to the tax repair fund. Sixteen objections in all were filed to the report. The objections are quite long and would require extending this opinion to undue length to set them out in full. The point made is that the commissioners had no authority to enter into the contract in question with Randolph & Bushnell, that the county court had no authority to approve and confirm the same, and that the commissioners have no right to transfer a special benefit fund to the repair tax fund. The main points made in support of each of these objections will be considered later.

· When the matter came on for hearing the court treated all matters set up in said report as *prima facie* true and held the burden of proof was upon the objectors to sustain their objections. At the conclusion of the hearing the court found that so much of said contract as related to surveys and plans related to matters for which the commissioners had a right to contract and that the compensation for such surveys was a part of the incidental expenses of the district incurred in necessary preliminary work, and that the contract, in so far as it related to those matters, should be

approved, but that the part of the contract which related to supervision of the construction of the work of the proposed improvement and the payment for the same did not relate to preliminary work necessary to be done before the assessment of benefits could be levied or spread; that the compensation provided for such work was not a part of the incidental expenses of said district and that such part of the contract should not be approved, and a judgment to that effect was accordingly entered.

As to the power of the commissioners to enter into the contract in controversy, section 28 of the Levee act makes corporations organized under the act bodies corporate and politic, with power to contract and be contracted with, to sue and be sued, and do and perform all such acts and things as may be necessary for the accomplishment of the purposes of their creation. Under the powers conferred by this section the commissioners may do any act or make any contract not expressly prohibited by the statute which is in furtherance of the general corporate purposes of the drainage district. (*People* v. *Spring Lake Drainage District,* 253 Ill. 479.) By section 26½ of the act the commissioners of such drainage districts are required to make an annual report, at the July term of the county court, of the condition of the levees or ditches in their districts, "together with their estimate of the amount necessary to keep the levees or ditch in repair, pay all incidental and necessary expenses for the ensuing year, and the amount necessary to complete the ditches, drains or levees embraced in the proceedings and to raise, strengthen or protect said ditches, drains or levees, when completed, and in constructing additional ditches, drains or levees when required to protect the lands embraced in the drainage and levee districts organized under this act, from inundation and overflow." By section 37 of the act it is provided that the commissioners may use money arising from the collection of assessments or coming into their hands as such commis-

sioners for the purpose of compromising suits and controversies arising under this act, and in the employment of all necessary agents and attorneys in organizing said district, and for conducting such other proceedings in law or equity, and for the purpose of constructing or repairing or maintaining any ditch, ditches, drains, levee or levees within or outside of said district, necessary to the protection of the lands and complete drainage of the same within said district, which money shall be under the direction and with the approval of the court; and that assessments may, from time to time, be levied, when it shall appear to the court that the previous assessment or assessments have been expended or are inadequate to complete the work, or it shall appear they are necessary for the maintenance or repairing, or when it shall become necessary for the construction of one or more pumping plants or additional works, or the completion of any work already commenced within any district, to insure the protection of the drainage of lands in said district, or to pay obligations incurred for the current expenses of said district, or in the keeping in repair and protection of the work of such district, or to pay obligations incurred for the completion of any work of said district as originally planned, etc.

Appellant first insists that the commissioners have no authority to create in advance an obligation and then levy an assessment to meet it, and that the contract in question creates such an obligation. He cites in support of this contention *Vandalia Drainage District* v. *Hutchins,* 234 Ill. 31, *Morgan Creek Drainage District* v. *Hawley,* 240 id. 123, and other cases, in which it was held that drainage commissioners have no power to create in advance an indebtedness for completing an improvement and then to levy an assessment to meet such obligation. Since those decisions were rendered section 37 of the Levee act has been amended by adding to the purposes for which an assessment may be levied the following words: "To pay obligations incurred

for the current expenses of said district or in the keeping in repair and protection of the work of such district." In *Meridian Line Drainage District* v. *Wiss,* 258 Ill. 600, we had occasion to consider the effect of this amendment, and we there held that under the added powers conferred by this amendment the commissioners had the power to incur indebtedness for current expenses and then to levy an assessment to pay such expenses. We there further pointed out that the per diem allowance of drainage commissioners, attorney fees and court costs are within the meaning of the words "current expenses," which are equivalent to running expenses, and mean any continuing, regular expenditure in connection with the carrying on of the business for which the district is organized.

It is next contended that the obligation incurred under this contract is not one of the current expenses of the district but is one for preliminary work incidental to the spreading of an assessment for a new and original work, and that an indebtedness of that character cannot be incurred in the first instance and then an assessment levied to meet such obligation. The principal case relied upon in support of the latter proposition is *Badger* v. *Inlet Drainage District,* 141 Ill. 540. In that case the drainage commissioners made a contract with Badger & Son to remove a dam across Inlet creek in the district for $1700 and agreed to levy an assessment to meet such obligation. They issued seventeen orders for $100 each in payment for the work to be done under the contract. An assessment was levied to pay said orders but the collection of the tax was enjoined. Suit was then brought in assumpsit on the orders. A demurrer was sustained to the declaration, and on appeal we held the drainage commissioners had no power to contract for the removal of the dam as it was not mentioned in the petition filed with the district, and that the property owners had been given no opportunity to be heard on the question of the character and cost of such improvement. It

was there further pointed out that before the commissioners could make any contract in that respect they must present a report to the court recommending the enlargement of the improvement, accompanied by plans, profiles and an estimate of the cost, including that for the removal of the dam, etc., and afford to the land owners of the district an opportunity to be heard upon the question of confirming such report. It follows from that decision that unless the commissioners have the power to enter into a contract for the making of the necessary surveys and plans for a contemplated improvement as an incident to the duties enjoined upon them they are powerless to initiate any improvement which they may deem necessary for the lands of the district.

It is a well known fact that engineers charge for their work in making surveys and plans for an improvement and that the expenses for that kind of work must be borne by somebody. Where the work is initiated by the commissioners the engineers must look to the district for their compensation, and if the commissioners have no power to contract for such work prior to the making of the application to the court for authority to make the proposed improvement it follows that the commissioners are powerless to initiate any proceedings for the better drainage of the lands in the district for want of authority to contract for the preliminary work necessary to be done to initiate the proceedings. By section 26½ of the Levee act the commissioners are required to set out each year in their annual report the condition of the levees and ditches in their district, with the amount necessary to keep the same in repair, pay all incidental and necessary expenses for the ensuing year, etc., to complete ditches or drains or to strengthen or protect said ditches and levees when required to protect the lands in the district from inundation and overflow. By section 37 of the same act, as amended in 1915, the commissioners are authorized to use any money arising from the collection of assessments or coming into their hands for

the purpose, among others, of constructing, repairing or maintaining any ditches, drains or levees within or without the district, and to levy additional assessments when the previous assessments have been expended or are inadequate to complete such work or necessary for the maintenance or repairs or for the current expenses of said district, such funds to be used under the direction and with the approval of the court. As an incident to the discharge of the duties enjoined on the commissioners by these sections they might reasonably find it necessary to employ engineers to make a topographical survey or other survey of lands in the district and prepare plans and specifications in order to ascertain what repairs or additional ditches were necessary for a more complete drainage of the lands of the district. The expenses of this character, while preliminary to the making of any improvement, are also of such a character as to be incidental to the discharge of the duties imposed upon the commissioners by these sections and well might be classed as one of the current expenses of the district for such year and payable as such. By current expenses are meant not only such expenses as are continuous and regular and occur each year in connection with the carrying on of the business of such municipalities, but also all those expenses which are necessarily incurred as an incident to the performance of the duties enjoined upon the commissioners and which they are required to perform each year, whether the particular work for which the particular expense is incurred is one which will necessarily occur each year or not. Thus viewed, we think the expenses incurred in making surveys and plans in order to report to the court the nature of the work which the commissioners believe is required to be done in any year in order to afford adequate protection and drainage to the lands are properly classified and included as a part of the current expenses for such year. They are of the same character as attorneys' fees and court costs, which were held to be a part of the current ex-

penses of such districts in *Meridian Line Drainage District* v. *Wiss, supra.*

Appellant further contends the contract is an entire one and must be either approved or rejected as a whole. With this contention we do not agree. The contract makes provision for three separate and distinct classes of work: (1) The making of a topographical survey of the lands of the district; (2) the making of plans and specifications for a combined system of drainage for the two districts; and (3) for the supervising and inspection of the construction of the work in accordance with such plans and specifications. So far as we are able to see, neither of the first two classes of work provided for in the contract is in any way dependable upon the third or inseparable from it. The court in its order approved the contract in so far as it provided for the doing of the first two classes of work therein provided for, namely, the making of a topographical survey and plans for a proposed system of drainage, but refused to approve the contract in so far as it provided for the supervising and inspecting of the construction of the improvement. We see no error in the order of the court in so holding. The contract was clearly separable into three parts, and the court did not err in approving it in so far as the same related to the first two matters provided for in said contract.

Appellant's further contention is that the court had no authority to authorize the transfer of the sum of $211.54 from the special benefit fund to the repair tax fund. It was stipulated with respect to this that this sum was raised by special assessment in 1910 upon all the lands in the district for the purpose of digging a certain ditch, called the Whitney slough ditch, in the district, and that this was the amount remaining after the work on that ditch ceased and has been carried on the books as a special fund ever since that time. No work has been done on the ditch for several years. There was evidence on the part of the ap-

pellant tending to show that the ditch had not been completed to the extent as originally contemplated. For this reason it is insisted the court was without authority to order a transfer of the money levied for this particular purpose to the general repair tax fund. No provision of the statute has been called to our attention which prohibits the commissioners in this class of drainage districts from transferring the remainder of a fund levied for a particular purpose to the general repair tax fund when not needed for the particular purpose for which it was levied. Nor can we see that appellant is in any way injured by the transfer of this money from the special benefit fund to the general repair tax fund. Under the provisions of section 37, *supra,* the commissioners have authority to use any of the funds in their hands arising from the collection of a special assessment for the purpose, among others, of constructing, repairing or maintaining any ditches or drains within the district. If this fund is transferred to the special repair tax fund it will still be available for use on this ditch if the same is in need of any repairs, as the commissioners have authority, by virtue of the above section, to use any funds in their hands for the purpose of making such repairs. Under the circumstances we see no error in the court directing the transfer of this fund to the general repair tax fund, where it is available for any of the corporate purpose of the district.

Complaint is also made of the action of the court in treating the special report filed by the commissioners as *prima facie* true and placing the burden of proof upon appellant to sustain the allegations of his objections filed to such report. The statute is silent on this question. The drainage commissioners, however, are officers of the court, and as such are required to annually report to the court the conditions in their district. If no objections are filed to such report the court unquestionably would be justified in treating the same as *prima facie* correct and approving

the same, and we can see no reason why the same rule should not obtain as to the *prima facie* correctness of the report even where objections are filed. In any event, appellant was in no way injured by the ruling of the court in this respect. Substantially the only questions presented by the objections were questions of law as to the power of the commissioners to enter into the contract and of the power of the court to subsequently approve such contract. There was no controversy as to the facts upon this point.

Perceiving no reversible error in the record the judgment of the county court will be affirmed.

*Judgment affirmed.*

---

(No. 11711.—Reversed and remanded.)
CHARLES BUSACK, Defendant in Error, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 20, 1918—Rehearing denied April 4, 1918.*

1. NEGLIGENCE—*what is not an invitation from motorman for passenger to alight from street car.* No inference of an invitation to alight from a street car before it comes to a stop can be drawn from the fact that the motorman looked around at a passenger when he unlatched the door.