(No. 36905.—

Wood River Drainage and Levee District, Appellee, *vs.* Alton Box Board Company *et al.,* Appellants.

*Opinion filed September 28, 1962.*

GREEN & HOAGLAND, of Alton, WILLIAM C. DUNHAM, of East St. Louis, JOHN H. CARUTHERS, of East Alton, EASTMAN, SCHLAFLY & GODFREY, of Alton, FRED P. SCHUMAN, of Granite City, and GORDON BURROUGHS, of Edwardsville, for appellants.

EDGAR R. KELLY, of East Alton, for appellee Wood River Drainage and Levee District, and HAROLD G. TALLEY, of Alton, Appellee *pro se*.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from certain orders entered by the county court of Madison County in assessment proceedings of the Wood River Drainage and Levee District. It comes directly to this court under the provisions of section 12—16 of the 1955 Illinois Drainage Code. (Ill. Rev. Stat. 1961, chap. 42, par. 12—16.) The orders appealed from were entered on November 28, 1960. They are: (1) an order striking objections to the commissioners' annual report for the period September 30, 1958, to September 30, 1959, and approving the report, and (2) an order approving payment of attorney's fees to Harold G. Talley, who had served as attorney for the District. The objections to both orders involve the compensation of Talley for legal services rendered to the District.

The appellants are sometimes referred to as "corporate objectors," as distinguished from certain individual property owners who filed objections in the trial court but did not appeal. They contend (1) that they were denied due process of law; (2) that because Talley received a monthly salary as attorney for the District, he could not receive further compensation for services rendered in connection with the leving of an additional assessment; (3) that the payments made to Talley were improper because they were not paid

out of the proceeds of the additional assessment; and (4) that the order approving payment of attorney's fees erroneously approved compensation for a longer period than had been requested.

The original 1951 project of the District contemplated the construction, in cooperation with the United States, of a levee system designed to furnish flood protection comparable to a 47-foot stage on the St. Louis, Missouri, gage. For this purpose an original assessment of $1,744,741.45 was levied, together with annual maintenance assessments of $22,759.97. Shortly before January 1, 1957, the corps of engineers of the United States Army, after a study of earlier floods, determined that the levee system of the District should furnish flood protection comparable to a 52-foot stage on the St. Louis gage and requested the District to give its formal assurance that it would participate in the 52-foot stage project. It also appeared that the annual maintenance assessments, as originally fixed, were too low and that they should be increased, and on August 1, 1957, the court confirmed an increased annual assessment roll in the amount of $86,470. The original project of the District had not been completed, and it appeared that the estimated cost of completion of the initial 47-foot project was $244,-000. The cost of completing the initial project, together with the cost of the work involved in connection with the 52-foot project, were the principal items that necessitated the additional assessment which was confirmed in the sum of $804,003.25.

Harold G. Talley had been employed in June of 1955 as attorney for the District at a salary of $400 a month. He performed all of the legal services in connection with the levy of an increased "annual maintenance assessment" and an "additional assessment" (Ill. Rev. Stat. 1957, chap. 42, par. 5—1) to provide for the completion and expansion of the work begun in 1951. The issues in this case concern his compensation for these services.

On April 4, 1957, the county court of Madison County ordered the District to levy an additional assessment of $600,000 and further ordered the commissioners to file an amended petition for the additional assessment as soon as the estimated costs for the complete project should be more definitely ascertained. The amended petition was filed March 5, 1959. Judgment confirming an additional assessment of $804,003.25 was entered on June 3, 1960. No appeal was taken from that judgment. Meanwhile, the financial report of the commissioners for September 30, 1958, to September 30, 1959, had been filed on November 25, 1959. It showed payments to Talley in excess of the sum of $400 per month. A petition for payment of partial attorney fees to Talley, which was filed on January 18, 1960, asked for an order directing payment of an additional $40,587.50.

This appeal is from orders entered on November 28, 1960, approving the annual report and approving payment of $30,000, in settlement of all amounts due to Talley for legal services until the termination of his employment on August 31, 1960.

The appellants' first contention is that they were denied a fair hearing, and deprived of due process of law, with respect to both the attorney's fee petition and the annual report. This contention makes it necessary to state in some detail the events that preceded the entry of the orders appealed from. The petition requesting the entry of an order approving the amount of partial attorney's fees, and directing their payment, was filed by the commissioners on January 18, 1960. By May 16, 1960, objections to the petition had been filed by the corporate objectors and by the individual-landowner objectors. Hearings were held on May 23, 24, 25, and 26, June 13 and 20, and July 11 and 13, 1960, and ample opportunity was given to all parties to introduce evidence and argue legal matters.

At the July 13 hearing, the individual objectors rested their case and the corporate objectors were asked whether

they had anything to present. They had nothing, and the court announced that the case was taken under advisement. After a five-minute recess, the court continued the hearing, "subject to a further setting." The corporate objectors indicated that they might request leave to file amended objections. The judge stated that they could ask leave to file amended objections, but he explicitly refused at that time to grant them leave to amend. At a hearing on July 29, the judge stated that if amendments to the objections were filed, "I will examine them and determine whether or not I will approve them for filing." The result of these proceedings was that the case was taken under advisement subject to being reopened if the corporate objectors sought and were granted leave to amend their objections.

On August 22, 1960, the appellants did submit motions asking leave to amend their objections. The main thrust of their original objections had been that the assessment roll had been based upon a determination that approximately $53,500 would be required for legal services, and they sought to have any allowance of attorney's fees that should be made so limited as to conform to that determination. The amended objections adopted, for the corporate objectors, the substance of objections that had been filed by the individual objectors on May 13. The language was more detailed, but the substance was the same,—that Talley was entitled to no fees whatsoever in excess of his retainer of $400 per month.

Lengthy hearings had already been had upon this objection, and under the circumstances the judge would have been justified if he had, on August 22, formally refused to grant leave to amend the objections and entered judgment on the basis of the hearings already held. The appellants were not prejudiced by the fact that his refusal to grant leave was instead embodied by implication in his final order, entered on November 28, 1960.

It does not appear that appellants ever requested a hear-

ing on their motion to amend their objections, or that they ever suggested that they had new evidence to offer, although three months elapsed between the filing of their motions seeking leave to amend and the entry of the final order. There was in fact already much evidence relating to their objections, and they do not appear to have been handicapped by any lack of evidence in the record in making their contentions on this appeal. They were not denied a fair hearing.

The appellants' objections to the commissioners' annual report were filed on February 29, 1960. On March 16, the commissioners moved to strike these objections, and supported the motion with a memorandum of authority. On April 25, the court reserved its ruling on the motion to strike and stated that leave would be granted to argue it orally, if requested. Appellants filed their answering brief on August 22, 1960. There was no further hearing on the matter before the court ruled on the motion in its order of November 28, 1960. At no time did the appellants ever request oral argument, although seven months elapsed between the filing of the motion to strike their objection and the court's ruling on that motion, and three months between the filing of the appellants' brief and the ruling. They were heard on the merits of the motion to strike in their written brief, and they were not deprived of a fair hearing or of due process of law.

The next contention of the appellants is that because Talley was employed by the District as an attorney, and paid $400 per month, he could under no circumstances become legally entitled to any other compensation for legal services. The record shows that in July of 1952 the commissioners of the District adopted a resolution reciting that a named attorney "was employed by the Commissioners beginning August 1st at a salary of $400 per month for his services." The minutes of the District show that on June 1, 1955, "Harold G. Talley was appointed attorney for the Wood River Drainage and Levee District to replace" the attorney

originally employed. Thereafter Talley was paid by the District at the rate of $400 per month.

The appellants rely upon *May* v. *City of Chicago,* 222 Ill. 595; *Gathemann* v. *City of Chicago,* 263 Ill. 292, and *Woods* v. *Village of La Grange Park,* 299 Ill. App. 1; 287 Ill. App. 201, for the proposition that one who is employed on a fixed salary by a public corporation can not be paid for additional work performed. The authorities relied upon are not applicable here. The *May* case and the *Gathemann* case involved full-time employees whose status was assimilated to that of municipal officers. They did not involve a contractual relationship between the municipality and the person seeking compensation from it.

*Woods* v. *Village of La Grange Park* involved a claim for legal services by one who held the office of village attorney. The history of the *Woods* case as it appears in 299 Ill. App. 1, and 298 Ill. App. 595, clearly illustrates the pertinent distinction between those cases and the case at bar. Upon a record that showed that Woods had performed legal services for the village at its request, it was held that he was entitled to recover. It was only when it was established in subsequent proceedings that he had accepted the office of village attorney and served in that capacity during the period in question, that recovery was denied.

In the present case the statute makes it plain that there is no office of attorney for the District. It provides: "The commissioners are empowered to  * * *  employ engineers, attorneys and other employees  * * *." (Ill. Rev. Stat. 1961, chap. 42, par. 4—14.) Attorneys who are employed under this provision of the Drainage Code are not "officers" who perform duties fixed by statute or ordinance.

The only written evidence of the contract of employment is in the minutes of the District which have been quoted. It does not fix the duties to be performed, and in this respect it is ambiguous. The interpretation placed upon it by the parties themselves is therefore of great importance

in determining its meaning. (*Hammer* v. *Sanders*, 8 Ill.2d 414, 421.) As the Restatement puts it, "If the conduct of the parties subsequent to a manifestation of intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation." (Restatement of Contracts, § 235(e).) In this case we think that the trial judge correctly found that it was not unreasonable to hire an attorney to handle the matters normally arising from the District's regular maintenance and operating work without requiring that attorney to perform, without any additional compensation, new and unanticipated work of an extensive character. The record makes it entirely clear that neither Talley nor the commissioners interpreted their agreement as contemplating the major new services that were required, and we hold that Talley was not precluded from receiving compensation in excess of $400 per month.

The petition for the payment of attorney's fees described the work done in connection with the increased annual maintenance assessments and the new additional assessment, recited that certain attorney's fees had been paid, and requested approval of the payment of an additional sum of $40,587.50. The order appealed from, which approved the payment of attorney's fees, recited that a compromise had been arrived at and that the balance claimed by Talley in his petition for fees had been compromised by the payment of $30,000.

The appellants' present contention assumes, as we have held, that there is no legal impediment to the payment of attorney's fees in excess of Talley's retainer of $400 per month. But it is argued that any additional fees could be paid only from the proceeds of the additional assessment which was confirmed on June 3, 1960. The provisions of the statute, however, show that the source of the funds used is not a significant matter. It explicitly authorizes the commissioners to "use funds of the district for any lawful purpose and compromise suits and controversies and employ

engineers, attorneys and other employees." Ill. Rev. Stat. 1961, chap. 42, par. 4—14.

The argument of the appellants that the District can not levy an assessment for past indebtedness is also contradicted by the statute which provides that the commissioners "may incur indebtedness in excess of uncollected assessments and funds on hand or otherwise available only for: (a) the current expenses of the district, including the fees of its officers, engineers and attorneys, court costs and incidental administrative expenses; * * *." (Ill. Rev. Stat. 1961, chap. 42, par. 6—5.) Many years ago the predecessor of this statutory provision was held to authorize a district to incur indebtedness for current expenses, to be paid for by a future assessment, and it was also held that attorney's fees were "current expenses" within the meaning of the statute. (*Meridian Line Drainage Dist.* v. *Wiss,* 258 Ill. 600; see, also, *Hunt Drainage Dist.* v. *Cole,* 283 Ill. 105.) We hold, therefore, that the source of the funds from which the attorney's fees were paid is immaterial. The claim that the taxpayers will be charged twice for the same legal services is without merit. To the extent that the amount levied for legal fees in the additional assessment exceeds the compromise figure actually paid, the statutory provisions for rebate and abatement provide adequate safeguard against double taxation. Ill. Rev. Stat. 1961, chap. 42, pars. 5—28, 5—29.

Appellants' last contention is that they were prejudiced by a discrepancy between the petition for payment of partial attorney's fees and the order approving payment. The petition sought a payment of $40,587.50, in addition to the $16,750 previously paid, as compensation for the three years, January 28, 1957, to January 7, 1960. The settlement payment approved by the court was $30,000, in addition to the amount already paid, and it included services rendered to August 31, 1960. Appellants have not questioned the sufficiency of the evidence to support the amount of the fees approved. Neither the reduction in the amount

claimed, nor the inclusion of services covering a longer period, prejudiced the appellants.

The orders of the county court of Madison County are affirmed.

*Orders affirmed.*