THE TELLURIDE POWER TRANSMISSION COMPANY *et al.*

*v.*

THE CRANE COMPANY.

*Opinion filed February 17, 1904—Rehearing denied April 7, 1904.*

1. CONTRACTS—*rule where contract is reduced to writing.* Writings showing, upon inspection, a complete legal obligation, without uncertainty or ambiguity as to the object and extent of the agreement, are conclusively presumed to include the entire agreement of the parties, and the omission of any point which might have been embodied does not justify admission of parol evidence.

2. SAME—*preliminary negotiations are merged in written contract.* Preliminary negotiations for the purchase of existing merchandise are merged in the written contract of sale, and if no warranty of quality is provided for in the contract the purchaser is precluded from claiming one.

3. SALES—*no implied warranty on sale of existing chattel.* In the sale of an existing chattel there is not, in the absence of fraud, an implied warranty of the good quality or condition of the thing sold.

4. SAME—*when purchaser cannot recover on the ground of fraud and deceit.* A purchaser of personal property cannot recover upon the ground of fraud and deceit where he sees the property before purchasing and has an opportunity to inspect the same, and there is no concealment by the seller nor any representations as to quality made by him to induce the purchaser to dispense with inspection.

*Telluride Power Trans. Co. v. Crane Co.* 103 Ill. App. 647, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. H. B. WILLIS, Judge, presiding.

This is an appeal from an affirmance by the Appellate Court of the judgment of the circuit court of Cook county in a suit by appellee to recover the balance due on a contract of sale of a quantity of iron pipe by appellee to appellants.

August 13, 1896, the Telluride Power Transmission Company contracted with one T. B. Rhodes for the erection of a flume and pipe line. In furtherance of his contract Rhodes gave appellee an order for pipe, specifying the kind of pipe required. The pipe was shipped to Ophir,

Colorado, as ordered, and there remained on the cars, owing to the fact that Rhodes became financially embarrassed and unable to pay the freight and take the pipe from the cars. Being advised that Rhodes was unable to take up the Crane Company's draft and complete his contract with the Telluride Company, Mr. L. L. Nunn, the general manager of the Telluride Company and one of the appellants here, went to Chicago and there had a conference with the representatives of the Crane Company relative to the completion of Rhodes' contract by appellants themselves, and concerning the quality of the pipe then on the cars at Ophir, which had been shipped to Rhodes by appellee. Afterward, Nunn, being then in New York, wrote the Crane Company the following letter:

"THE TELLURIDE POWER TRANSMISSION CO., ⎫
    HOLLAND HOUSE, N. Y., *Dec. 18, 1896.* ⎬

"*Crane Co., 10 North Jefferson St., Chicago, Ill.:*

"GENTLEMEN—I am advised from Telluride, Colorado, that Mr. T. B. Rhodes is unable to take up your draft against bill of lading for about $2000 on account of material ordered by him to complete a contract with the Telluride Power Transmission Company. We have advanced Mr. Rhodes a good deal beyond the payments provided for by our contract with him, and it is not entirely convenient for me to pay your draft while absent from Telluride. I shall return next month. If you will order the material delivered to us by the railway company and it passes the inspection of our engineer, we will receive it at once and pay your draft on February 1, and also greatly appreciate your courtesy in the matter. On account of the well known strength of our company I have no hesitation in asking the credit. Mr. James Campbell, of St. Louis, is the president, and Mr. H. R. Newcomb, treasurer of the Savings and Trust Company of Cleveland, Ohio, is the treasurer of our company. Please telegraph me, care Holland House, New York, your decision.          "Yours truly,          LUCIEN L. NUNN."

To this letter the Crane Company replied by wire under date of December 22:

"Letter received; on receipt of your company's note due February 1 for nineteen hundred seventy-six dollars nine cents will order material delivered; write to-day.      CRANE CO."

It also wrote the following letter, stating, among other things:

"This amount does not correspond with the amount of our draft, which was $1945.06. We had, however, deducted $31.03 for cash discount, on the understanding that draft was to be paid promptly. Of course, under the proposed arrangement this allowance will not be made. Your proposition is to pay us on February 1, provided the material, when delivered, passes the inspection of your engineer. We cannot consent to any condition of this character, because it is too general in its terms. We do not know what your arrangement was with Mr. Rhodes nor what kind of inspection would be required. We simply know the material we have furnished is strictly in accordance with Mr. Rhodes' order to us, and we should not be willing to deliver it except on absolute payment or promise of payment. You will no doubt appreciate the correctness of our position on this point.    "Yours truly,    CRANE CO.,

O. P. DICKINSON."

As this letter refused inspection, the telegram and letter were given no immediate attention by Mr. Nunn. On December 30, 1896, the Crane Company again wired, as follows:

"12/30/'96.

"*L. L. Nunn*—Please reply to our letter of twenty-second.

CRANE CO."

To this telegram Mr. Nunn replied by the following letter:

"HOLLAND HOUSE, NEW YORK, *Dec. 30, 1896.*

"*Crane Co., 10 North Jefferson St., Chicago, Ill.:*

"GENTLEMEN—I greatly regret the delay in adjusting the matter of the pipe shipped to Mr. T. B. Rhodes at Telluride, Colo. I have but just returned from my Christmas vacation.

"My letter to you must have been very ambiguous, for you have entirely misunderstood my proposition. It was not to receive the pipe and then pay for it if satisfactory, but to ascertain by inspection whether it was such as we required, and if it was, to receive it immediately and pay for it on the first of February next. I am confident Mr. Rhodes is financially unable to comply with his contract with either you or us. Of course, as we did not order the pipe you do not expect us to take it and pay for it unless it is such as we can use, but if it is such as we require we are anxious to have it immediately, and,

of course, will pay your price.  I do not like to give a promissory note.  Our company has never executed a note in its entire history.  A note' would add nothing to your security.  If we take the material we are bound to pay for it. ·

"Please do me the courtesy of delivering this shipment to us without further delay, and I will telegraph my engineer to inspect it at once and receive it on the cars if he thinks the strength sufficient.  Being away from home, I should like very much to have this favor.  Kindly wire me on receipt of this.

                    "Very truly yours,          L. L. NUNN."

To this letter the Crane Company telegraphed: "Secretary Murphy will call and see you Wednesday night or Thursday morning."  Mr. Murphy called, but nothing was done in New York, and on January 22, 1897, appellee wired the Telluride Company as follows:

"Railroad wires pipes still uncalled for and must be disposed of without delay.  Nunn, when here, agreed to accept pipe, and we supposed it taken before this.  Why delay?  Answer.

                                        CRANE CO."

This was replied to on January 23, as follows:

"*To Crane Co., Chicago, Ill.:*

. "Delay account complications with contractor, but practically settled.  Propose accepting soon.

                    TELLURIDE POWER TRANSMISSION CO."

On February 5, 1897, Nunn wrote the Crane Company this letter:          "DENVER, COLO., *Feb. 5, 1897.*

"*Crane Co., 10 North Jefferson St., Chicago, Ill.:*

"GENTLEMEN—I was delayed in· my return west by the very serious illness of my brother, and but just arrived here this morning.  My engineer from Telluride met me, and explained the situation respecting the shipment of pipe to Mr. Rhodes at Ophir.  The whole matter is certainly very badly mixed.  Mr. Rhodes cannot be found. . He has abandoned the matter, and the demurrage on the four cars since November 16, 17 and 18 amounts to something over $400.  My firm has represented the railroad, as attorneys, ever since its construction.  I called to-day and used all the influence I could to have the demurrage charge deducted, and succeeded to the extent of having it reduced to $100, which I believe is less than the actual expense incurred by the railroad company in pulling the cars backwards and forwards over the single switch at that place.  My engineer

informs me that we can use about one-half the pipe at the present time and the other half in the construction of a duplicate line which we propose to put in during May and June. In the meantime we must order new pipe from you to complete both lines.    The freight charges on these four cars amount to $1174.    If we pay this amount and the demurrage charges, making nearly $1300, and place with you another order for pipe to complete two lines, we do not feel that we should pay for the half of the pipe which will not be used for some months, until we use it,—or, to fix the date definitely, until June first,— and, of course, we cannot afford to pay without charging to your account the demurrage.

"We regret very much that you have suffered any inconvenience and we are anxious to render you any assistance in our power, but, of course, we are not responsible for Mr. Rhodes' contracts, and it would seem from the condition he is in that he is entirely unable to make any use whatever of the pipe, and that you would therefore have it on your hands, with freight charges one way amounting to more than half the price of the pipe, and including return charges amounting to more than the entire price of the pipe.    If you will instruct us by wire Monday morning to do so, we will settle with the railroad and stop further expense and will take the pipe at the original bill, paying one-half within a few days and the other half about June 1, charging you the amount paid for demurrage.

"I shall only be in Telluride a few hours on Monday, leaving there in the afternoon for our works in Utah and Montana. Kindly attend to this matter without delay, and wire me so that I can close it up while in Telluride.    I might add, that owing to the long delay it is now immaterial to us whether we make use of the pipe at all before summer.

"Very sincerely yours,    L. L. NUNN."

To this appellee immediately replied by wire:

"*L. L. Nunn, Agent T. P. T. Co., Telluride, Colo.:*

"We accept proposition contained in your letter fifth.

CRANE CO."

Appellee wrote the same day this letter:

CHICAGO, *Feb. 8, 1897.*

"*L. L. Nunn, Manager Telluride Power Trans. Co., Telluride, Colo.:*

"DEAR SIR—We received this morning your favor of the 5th, and as requested immediately wired you in reply, 'We accept proposition contained in your letter 5th.'    This proposition is that you will take the pipe which we sold to T. B. Rhodes & Co.,

paying the freight and demurrage charges, and that you will then pay us the amount of our original bill less $100 demurrage, making payments one-half within a few days and the other half about June 1. The amount of the original bill referred to was $2048.77. From this is to be deducted a freight allowance of $72.68, leaving the net amount $1976.09, as stated in our letter of December 22, addressed to you in New York.

"We had rather expected to receive payment of the full amount now, but are willing to make the concession of time in view of all the circumstances, and especially because you prom- ise to give us orders for additional pipe. We shall be glad to receive such orders, and think that by dealing directly with you we shall avoid any misunderstandings.

"Yours truly,  CRANE CO.,
O. P. DICKINSON."

Appellants then received and used the pipe in con- troversy.

Upon the trial the following stipulation was filed: "A question has arisen as to whether plaintiff or the defendants are entitled to open and close the argument in the above entitled cause, and for the purpose of dis- posing of the question it is agreed between the parties hereto that theretofore the defendants purchased from the plaintiff a lot of pipe then on the cars at the town of Ophir, Colorado, at the agreed price of $1876.09; that $1000 was paid on account of said purchase on June 29, 1897, and that no other payments have been made; and it is further agreed that defendants received said pipe, and that this agreement shall be read in evidence when the jury is sworn to try the issues in this case, or to the court if the jury should be waived, and that thereupon the defendants shall be permitted to offer their evidence, and that counsel for defendants shall have the opening and closing arguments."

After receiving the pipe appellants made a payment of $1000, and appellee brought suit to recover the unpaid balance of $876.09.

Appellants filed separate pleas of the general issue and set-off, alleging that they were engaged in the busi-

ness of generating electricity by water power, obtained by means of water conveyed by pipe lines, and that appellee sold them pipe to be used for that purpose, which pipe appellee guaranteed was of a certain strength, quality and thickness, of the very best material in the market, suitable for the purpose for which it was to be employed, of sufficient strength and quality to carry water, as aforesaid, and to withstand the pressure consequent upon the transmission of such water; that the pipe was delivered and partly paid for and appellants placed it in position for the transmission of such water, but that the pipe was not made in accordance with the specifications and requirements in the order for the same, nor was the pipe of the strength, thickness and quality guaranteed by appellee, nor was it of sufficient strength to carry such water, and that by reason of the poor quality of the pipe, and the poor, unskilled and insufficient character of the workmanship on it, it burst repeatedly and caused valuable lands and property of appellants to be overflowed, and after being repaired burst repeatedly, so that it could not be used for the transmission of such water, whereby the appellants were damaged to the extent of $50,000.

On the trial appellants offered evidence to show that Rhodes, before giving his order, showed to Mr. Lee, the agent of appellee, his contract with the Telluride Company and the profile showing the requirements and water pressure of the contemplated line; that Lee understood that the pipe was to have a safety factor of five and a tensile strength of 60,000 pounds to the square inch, and that said material of that quality would be furnished. They further offered to show that after the failure of Rhodes to complete his contract, when Mr. Nunn called upon the Crane Company in reference to the delivery to appellants of the pipe on the cars at Ophir, Colorado, and mentioned the requirements of the pipe, he was assured by the representatives of appellee that the quality of the pipe was the very best. Appellants also

offered to show that the pipe was installed and burst repeatedly under the water pressure, causing great damage; that the pipe was apparently burnt in welding, and had not the requisite tensile strength nor a safety factor of five.   This evidence was admitted over the objection of appellee and afterward stricken out by the court, and the jury were instructed to return a verdict in favor of appellee for $876.09, the court holding that the contract was in writing and embraced in the letters and telegrams hereinbefore set forth.   On appeal the Appellate Court sustained the trial court, holding that the letter of appellants of February 5, 1897, together with appellee's reply thereto by telegram and letter of February 8, 1897, constitute a written contract between appellants and appellee, in which all previous negotiations were merged. To reverse that judgment appellants now prosecute this further appeal, contending that no contract is shown to have been entered into by both appellants; that the letters of February 5 and 8 and the telegram of the eighth do not constitute the agreement between the parties, but that it is to be found in all the negotiations, oral and written, which passed between the parties; and that, even if the letters of the fifth and eighth and the telegram of the eighth do constitute the entire contract, the circumstances shown in evidence sustain the contention of an implied warranty of the fitness of the pipe sold for the purpose to which it was to be put.

KRAUS, ALSCHULER & HOLDEN, for appellants.

JAMES H. BARNARD, (E. M. ASHCRAFT, and E. M. ASHCRAFT, Jr., of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The action in this case is not brought upon the contract between the Crane Company and Rhodes to furnish pipe to the latter for the pipe line he had contracted to erect for the Telluride Company, but the suit is against

the latter company and L. L. Nunn, the general manager of that company, (appellants here,) jointly, upon a contract for the sale of certain pipe at the time on cars at Ophir, Colorado, which had been shipped by appellee to Rhodes on his contract, which he, by reason of his insolvency,.was unable to perform, the pipe being thereby left upon the hands of appellee. Appellants contend that no joint contract by them is shown by the record. We do not think the position can be maintained. No plea in abatement or in bar was filed and no proof offered on the point, but by the stipulation of parties which was filed on the trial, the joint liability is admitted, and further discussion on the question is thereby rendered unnecessary.

It is again urged that the Appellate Court erred in holding that the letters of February 5 and 8 and the telegram of February 8, set forth in the foregoing statement, constitute the entire contract between the parties, it being insisted that the entire agreement is to be found in all the negotiations, oral and written, had between the parties, and that appellants had the right to show an express warranty of the pipe to them. The questions as to what writings should be considered, and whether or not those considered constituted a written contract, and whether or not the written contract fully expressed the agreement between the parties, were for the court. The rule is, that when the writings show, upon inspection, a complete legal obligation, without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included in the writings. The fact that a point has been omitted which might have been embodied therein will not open the door to the admission of parol evidence in that regard. (*Seitz* v. *Brewers' Refrigerating Co.* 141 U. S. 510.) In the case at bar the pipe in question was on the cars at Ophir, where it had been consigned to Rhodes. Rhodes was unable to take

and pay for it, and appellants began negotiating for its purchase with a view of completing the pipe line themselves, which Rhodes had abandoned. Mr. Nunn had interviews with the representatives of the appellee and exchanged letters and telegrams in relation to the proposed purchase by appellants, which finally culminated in Nunn's written offer, contained in his letter to appellee dated February 5, 1897. Appellee's telegram and letter of the 8th of February, accepting the offer, closed the deal. The rule is too well recognized to require citation of authorities that all preliminary negotiations, whether oral or written, are merged in the written contract. The offer by appellants to buy the pipe, which appears in Nunn's letter of February 5, and the stipulation of terms therein upon which the purchase would be made, considered together with appellee's letter and telegram of the eighth accepting appellants' offer, constitute a contract in writing which is clear and unambiguous, both as to its object and extent. Considering these documents alone, without any reference to previous negotiations, they leave nothing to be explained,—they contain all the elements of a complete written contract. If appellants had desired any further conditions, it was their duty to have so stipulated. The fact that in their written proposal to purchase they require no warranty of the pipe, precluded them from insisting upon it on the trial.

It is further urged, that conceding that the letters and telegram of February 5 and 8 constitute the entire contract between the parties, yet there is an implied warranty that the pipe was fit and suitable for the purpose for which it was intended to be used. The rule is, that if an article is to be made or supplied to the order of a purchaser there is an implied warranty of the fitness of the article for the special purpose designed by the buyer, if that purpose be known to the vendor; but in the bargain and sale of an *existing* chattel there is not, in the absence of fraud, an implied warranty of good quality or

condition of the thing sold. (Benjamin on Sales, sec. 647; Mechem on Sales, secs. 1312-1316; *Kohl* v. *Lindley*, 39 Ill. 195; *Misner* v. *Granger*, 4 Gilm. 69; *Carondelet Iron Works* v. *Moore*, 78 Ill. 65.) In the case at bar the chattels in controversy were in existence, on the cars near appellants' works, where appellants passed them frequently during the several months they lay there. That the appellants knew and recognized that they could determine, by inspection, whether or not the pipe would suit them, is evidenced by the fact that in the preliminary negotiations for the purchase Mr. Nunn stated that if the pipe should suit their purpose they would take it and pay for it. Where the purchaser of personal property sees the property before taking possession and has every opportunity to inspect the same, and no concealment is used on the part of the seller or representations made by him respecting the quality to induce the purchaser not to examine the same, the purchaser cannot recover on the ground of fraud and deceit. (*Carondelet Iron Works* v. *Moore, supra.*) In the case at bar we do not think the evidence as to representations by appellee of the quality of the pipe, even if admitted, would make such a case of deceit or false statements, knowingly made, as would warrant a finding in favor of appellants, where it is shown that they had as good opportunity of testing and inspection as had appellee. There is no evidence whatever tending to prove that statements were made to appellants for the purpose of inducing them to waive the inspection which they first insisted on. The Crane Company simply wrote that it would not consent to make the sale dependent upon inspection by appellants' engineer. Here was an existing chattel, which, in the absence of an express warranty, appellants must be held to have purchased upon their own inspection, or, if they failed to do so, at their own risk.

The judgment of the Appellate Court is right and will be affirmed.                    *Judgment affirmed.*