The New York Central Development Corporation, a Delaware Corporation, and Jones & Laughlin Steel Corporation, a Pennsylvania Corporation, Plaintiffs-Appellants, v. Edward J. Byczynski and Helena S. Byczynski, Defendants-Appellees.

**Gen. No. 67–95.**

Third District.

May 20, 1968.

Rehearing and petition for certification of importance denied July 16, 1968.

Peterson, Johnson & Martin, of Princeton, James W. Kissel, of Chicago, and Heyl, Royster, Voelker & Allen, of Peoria, for appellants.

John J. Wosik, of Henry, Berry & O'Conor, of Streator, and Cassidy & Cassidy, of Peoria, for appellees.

SCHEINEMAN, J.

The plaintiffs obtained an option to buy 370 acres of land from defendants at a fixed price of $330,000. The contract contained this provision:

"The conveyance of the above premises is conditioned upon conveyance of suitable exchange property to seller. Seller will sell only if such exchange property cannot be acquired by purchaser."

When the buyers exercised their option as provided in the contract, the sellers declined to close the deal. Plaintiffs then filed this suit in equity praying for specific performance. It was defended on the ground that plaintiffs had not performed their obligation to produce suitable exchange property. The chancellor denied the relief deciding for defendants on the ground principally that the words "acquired by purchaser" mean that the plaintiffs were obligated to acquire and tender suitable exchange property.

When an exchange is contemplated it is surely essential that the party tendering the exchange be able to convey, or cause to be conveyed, the title thereto. To this extent that party must acquire a right to convey. But, there arose a number of questions which cannot be answered by merely reading this paragraph. Who has the right to select the property to be exchanged? To whom

must it be suitable? May the plaintiffs tender acreage which the defendants say is too far away or otherwise undesirable to them? May the plaintiffs claim credit on their contract for their costs even if defendants assert the price is too high?

Surely the parties must have had some understanding on these subjects when they contracted. Yet, the contract does not spell out what they intended, thus leaving both sides room to claim what they think was meant. With two possible answers to these and other questions, the written contract left matters open to dispute unless both sides dealt at all times in good faith.

■ The rest of the contract throws no light on these questions. The fact is the parties did not write a complete statement of their intentions. The option agreement is incomplete on its face as to various matters which have to be agreed upon. In this situation, evidence of prior negotiations is admissible.

"Whether the written contract was intended to be a complete and final agreement, must be determined from the language of the contract and the circumstances of the case. If it is silent in essential particulars, parole evidence is admissible to establish the missing parts." Stevens v. Fanning, 59 Ill App2d 285, 207 NE2d 136; Olson v. Rossetter, 399 Ill 232, 77 NE2d 652; Meyer v. Sharp, 341 Ill App 431, 435, 94 NE2d 510; Fuchs & Lang Mfg. Co. v. R. J. Kittredge & Co., 242 Ill 88, 94, 89 NE 723.

"Parole evidence which does not vary or contradict the document under consideration is admissible to establish a fact as to which the instrument is silent." 18 ILP, Evidence, § 271.

"The intention of the parties, it is true, must govern; but the experience of human affairs teaches the courts that this intention is not to be sought merely on the apparent meaning of the language used, but this language

may be enlarged or limited by reference to the circumstances surrounding the parties and the object they evidently had in view." Pocius v. Halvorsen, 30 Ill2d 73, 78, 195 NE2d 137.

In addition to the line of cases above referred to which permit evidence to be admitted as to prior and contemporaneous negotiations, where it is found that the written agreement is silent in some essential matters, there is another line of cases which refer to the acts of the parties as showing what they believe was intended. Some of these cases are as follows:

"In the construction of a contract it is always allowable to look to the interpretation the parties place upon it, contemporaneously or in its performance for aid in ascertaining its meaning." Consolidated Coal Co. v. Schneider, 163 Ill 393, 396, 45 NE 126.

"Where the parties to a contract have approved a particular construction of doubtful terms or conditions of the contract, the court will follow the construction which the parties have placed upon it." Abingdon Bank & Trust Co. v. Bulkeley, 390 Ill 582, 62 NE2d 447.

"There is no more convincing evidence of what the parties intended by their contract than to see what they did in carrying out its provisions." Department of Revenue v. Jennison Wright Corp., 393 Ill 401, 408, 66 NE2d 395.

"It is a familiar rule of construction, that where the terms of an agreement are in any respect doubtful or uncertain and the parties to it, have by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts, in the event of litigation concerning it." Wood River Drain. and Levee Dist. v. Alton Box Board Co., 26 Ill2d 53, 186 NE2d 49; Pocius v. Halvorsen, 30 Ill2d 73, 81, 195 NE2d 137.

Applying these legal principles to the facts brought out by testimony in this case, we find that the attorney who was later retained by defendants, had drawn up this clause concerning exchange property for the purpose of deferring large capital gains which would be heavily taxed. He owned land in this vicinity and sold an option on it to the plaintiffs and included therein this paragraph. He also used it for other clients. He had told representatives of the plaintiffs they should not attempt to find exchange property since that would simply drive the price up. When the defendants retained him in their transaction he informed them about the exchange clause, its purpose and that he had told the plaintiffs they were not to seek exchange property.

This option contract with the defendants was executed in February, 1965. Thereafter the defendants proceeded to look for property they would deem acceptable. They consulted numerous real estate brokers and inspected farms over a wide area.

There is no possible doubt under the evidence in this case that Mr. Byczynski knew he was to select property suitable to him for exchange purposes. He testified that in the course of his search he actually made offers for three different farms. His offers were rejected.

Months later in September of 1965 the plaintiffs notified defendants they were exercising the option. Thereafter, on September 16, 1965 Mr. Byczynski met with representatives of the plaintiffs. At that meeting he complained that he was not given enough time to locate exchange property and asked for an extension to March 1, 1966.

██ Since it is established without controversy that defendants were to select exchange property pursuant to their agreement and they acted upon that agreement in an effort to acquire it, it follows that the defense in this case, in which it is asserted that the plaintiffs

478

were supposed to seek out and procure exchange property, was contrary to the facts.

Accordingly the decree entered in this case is reversed and the cause is remanded with directions to enter a decree granting the relief prayed for.

Reversed and remanded.

ALLOY and STOUDER, JJ., concur.