REPORTS CORPORATION, Plaintiff-Appellee,

v.

TECHNICAL PUBLISHING COMPANY, Defendant-Appellant.

REPORTS CORPORATION, Plaintiff-Appellant,

v.

TECHNICAL PUBLISHING COMPANY, Defendant-Appellee.

Nos. 17046, 17047.

United States Court of Appeals Seventh Circuit.

May 22, 1969.

Robert E. Pfaff, Chicago, Ill., Marshall Simonds, Boston, Mass., for Reports Corp.

Thomas A. Reynolds, Jr., Edward J. Wendrow, Chicago, Ill., for Technical Pub. Co.

Before HASTINGS, Senior Circuit Judge and SWYGERT and FAIRCHILD, Circuit Judges.

SWYGERT, Circuit Judge.

This is a diversity action brought by Reports Corporation, a New Jersey corporation, against Technical Publishing Company, an Illinois corporation. The plaintiff seeks damages for breach of an oral agreement. The district court found in favor of the plaintiff, awarded $30,150 damages, and entered judgment in that amount against the defendant. Both parties have appealed from the judgment.

In its appeal, Technical, as defendant-appellant, presents two questions: (1) whether the finding of the district court that Technical made an oral promise to Reports is supported by the evidence and is not clearly erroneous, and (2) whether the parol evidence rule was violated by the enforcement of the oral agreement against Technical.

In its cross-appeal, Reports, as plaintiff-appellant, presents the single question whether the district court erred in not awarding prejudgment interest on the amount of recovery.

No useful purpose, we believe, could be served by a long narration of the many details giving rise to this lawsuit. We think it sufficient to outline the essential findings of the district court.

In August 1956 Reports purchased eighty per cent of the capital stock of Petroleum Equipment Publishing Co., Inc., whose sole business was the publishing of a trade magazine, *Petroleum Equipment*. The stock was acquired from Arthur D. Youmans, president of Petroleum and its sole shareholder. As part of the transaction Reports promised to carry out certain unaccrued obligations due Youmans arising out of an agreement, dated July 1, 1956, between him and Petroleum. This obligation specifically required Reports to pay Youmans $1,050 per month from July 1, 1956 to August 31, 1961 in return for Youmans' supplying certain advice and consultation to Petroleum. Reports executed a written guarantee of Petroleum's obligation to Youmans under their July 1, 1956 agreement.

Reports' investment in Petroleum proved to be a financial failure. In April 1958 George Stewart, president of Reports, and Youmans met with Kingsley L. Rice, president of Technical, and entered into a discussion concerning a sale of Petroleum's assets to Technical. During the next few weeks the boards of directors of Reports and Technical authorized their respective presidents to negotiate a sale of Petroleum's assets.

In June 1958 Stewart and Rice met for further discussion. At that time Stewart explained the terms of the consulting agreement between Youmans and Petroleum and the obligation of Reports as guarantor of the Youmans agreement. On July 8 Rice wrote Stewart indicating Technical's interest in buying the assets of Petroleum and suggesting terms for such purchase. In his letter Rice proposed a purchase price of $32,000 to be paid in installments. He also acknowledged the existence of Youmans' consulting contract and spoke of Technical's assuming the "balance of the obligation due Arthur Youmans."

On July 17 Stewart, Rice, and other representatives of the parties met again. The district court's finding with respect to this meeting reads in part:

> During this meeting Kingsley L. Rice made an oral promise to the representatives of the plaintiff that the defendant would assume the balance of the obligations owed to Youmans under the Consulting Agreement as part of the consideration for the defendant's purchase of the assets of Petroleum. In connection with this promise Kingsley L. Rice explained that the defendant intended to pay the amounts due Youmans under the Consulting Agreement as tax deductible expenses rather than as a part of the purchase price for the assets of Petroleum.

Shortly after this meeting, the attorney for Technical prepared a draft purchase contract. The draft was sent to Herman S. Swartz, Reports' secretary-treasurer, who in turn transmitted it to the company's attorney in Boston. Upon receiving the draft, Reports' lawyer called Technical's lawyer in Chicago and inquired why the draft agreement omitted any mention of the promise by Technical to assume Reports' obligation to Youmans under the consulting agreement. Technical's attorney said that he was unwilling to include this promise in the asset purchase agreement because he was afraid that the moneys to be paid by Technical under the consulting agreement might be ruled for tax purposes as an acquisition of good will and therefore not deductible as a business expense. Reports' attorney accepted this statement and agreed that his client would execute a purchase agreement omitting any reference to Technical's promise to assume the unaccured payments under the consulting agreement.

A purchase agreement embracing the prior understanding was executed by the parties on July 25, 1968. The written agreement contained no provision that Technical was to assume the then unaccrued $36,000 of Reports' obligation under its guarantee with Youmans. At no time thereafter did Technical pay Youmans any amount in satisfaction of this obligation.

In 1961 Youmans brought suit against Reports in the federal court for the district of New Jersey, seeking recovery of the amount due under the consulting agreement which had been guaranteed by Reports. Reports notified Technical of the suit and requested it to assume the defense. Technical refused to do so.

Thereafter Reports compromised and settled the Youmans' suit for $25,000, after first notifying Technical of the proposed settlement and requesting Technical to contribute to the settlement. The request was refused.

The instant action was commenced on June 16, 1965. After trial, the district court entered judgment in favor of Reports on May 15, 1968. In computing damages of $30,150 the court awarded Reports $25,000, the settlement figure, together with $5,150 representing legal expenses incurred by Reports in the defense of Youmans' lawsuit. The prejudgment interest requested by Reports was denied.

Technical contends that the district court erred in finding that Technical made an oral promise to Reports to assume and discharge the obligation of Reports to pay the unaccrued payments due Youmans under the consulting contract. There were numerous and sharp disputes in the evidence. Probably the

sharpest dispute, and the one which dealt with a key point in the negotiations leading to execution of the purchase agreement, related to the July 17, 1958 meeting. The principals present at this meeting were Stewart and Swartz representing Reports and Kingsley L. and Arthur Rice, respectively president and vice-president of Technical, and Harry P. Stinespring, Jr., Technical's attorney. We have reviewed the evidence and conclude the district judge was fully warranted in finding that at this meeting the president of Technical made an oral promise to Stewart and Swartz obligating Technical to assume the balance of the payments which Reports was required to pay Youmans under the consulting agreement.

■ Another apparent conflict in the evidence relates to the telephone conversation on July 22 or July 23, 1958, between Charles E. Goodhue, attorney for Technical, and Stinespring. The district judge made the following finding with respect to this conversation:

> Goodhue inquired why the draft agreement omitted any mention of the promise of the defendant to assume the unaccrued portion of the obligations owed Youmans under the Consulting Agreement. Defendant's counsel stated that he was unwilling to include this promise in the asset purchase agreement because he was afraid that the moneys to be paid by the defendant under the Consulting Agreement might be construed for tax purposes as an acquisition of good will and therefore not deductible by the defendant.

Stinespring denied ever making these statements to Goodhue. Both Goodhue and Stinespring testified at the trial. Their testimony was in direct conflict. The district judge, in view of his finding, believed Goodhue and rejected the conflicting testimony of Stinespring. We find no reason to disturb the district judge's credibility determination.

Finally, we believe that the district judge was justified in making the following finding:

Various writings prepared or acknowledged by authorized representatives of the defendant and bearing dates between August 6, 1958 and March 18, 1959 * * * contain various admissions by the defendant that confirm and corroborate the oral promise by the defendant to the plaintiff to assume and discharge plaintiff's obligation to Youmans under the Consulting Agreement in the amount of $36,000.

We have examined these subsequent writings and conclude that they corroborate the oral promise which the district court found was made by Technical to Reports on July 17, 1958.

Next, Technical contends that since any oral understanding between Reports and Technical with regard to the Youmans' consultation contract occurred before the purchase agreement of July 25, 1958 was executed, the oral understanding cannot be used to supplement terms of the written agreement.

■ It is fundamental that a valid contract may be partly written and partly oral and that if the parties do not intend to reduce the entire contract to writing, the unwritten contractual terms may be proved by parol evidence.

The initial question for determination is whether the written instrument was intended to be a complete and integrated statement of the entire transaction between the parties. Technical argues that this question can be resolved by looking at the written instrument. It maintains that under Illinois law when a written agreement purports on its face to be a complete expression of the whole agreement between the parties, parol evidence will not be permitted to add to the terms of the agreement, even though the writing contains nothing on the subject to which the parol evidence is directed. Technical fortifies its argument with reference to the decisions in Armstrong Paint & Varnish Works v. Continental Can Co., 301 Ill. 102, 133 N.E. 711 (1921), and Telluride Power Transmission Co. v. Crane Co., 208 Ill. 218, 70 N.E. 319 (1904).

Although the test suggested by Technical is supported by the cited cases, it carries an essential qualification perhaps best embodied in the following language of the Illinois Supreme Court in Fuchs & Lang Mfg. Co. v. R. J. Kittredge & Co., 242 Ill. 88, 89 N.E. 723, 725 (1909):

> The [parol evidence] rule is a familiar one, but it is subject to the qualification that a separate parol agreement as to any matter not inconsistent with the terms or legal effect of the written agreement, and on which it is silent, may be shown, where it appears that the written instrument was not intended to be a complete and final statement of the whole transaction between the parties. [Authorities omitted.] Whether the letter in question was intended by the parties as a complete and final statement of the whole agreement between them was a question to be determined by the court from the circumstances of the case.

 The Illinois Appellate Court in Spitz v. Brickhouse, 3 Ill.App.2d 536, 539–540, 123 N.E.2d 117, 119, 49 A.L.R. 2d 673 (1954), elaborated the view expressed in the *Fuchs & Lang* case:

> The law is well-established that where a written contract is uncertain, ambiguous or incomplete, evidence of a contemporaneous oral agreement to prove the entire contract is admissible. Scholbe v. Schuchardt, 292 Ill. 529, 534, 127 N.E. 169, 13 A.L.R. 247. Whether it was intended to be their complete and final agreement is to be determined from the circumstances of the case. Fuchs & Lang Co. v. R. J. Kittredge & Co., 242 Ill. 88, 94, 89 N.E. 723. If it is silent in essential particulars, parol evidence is admissible to establish the missing parts, although inadmissible to contradict those unambiguous terms expressed in the document. Fuchs & Lang Co. v. R. J. Kittredge & Co., supra; Meyer v. Sharp, 341 Ill.App. 431, 435, 94 N.E.2d 510.

Other Illinois cases which take the same view are Unique Watch Crystal Co., Inc. v. Kotler, 344 Ill.App. 54, 62, 99 N.E.2d 728, 732–733 (1951); Continental Illinois National Bank & Trust Co. of Chicago v. National Casket Co., 27 Ill.App. 2d 447, 453–454, 169 N.E.2d 853, 856 (1960); Stevens v. Fanning, 59 Ill.App. 2d 285, 292, 207 N.E.2d 136, 20 A.L.R.3d 769 (1965); and New York Central Development Corp. v. Byczynski, 95 Ill. App.2d 474, 476–477, 238 N.E.2d 414, 416 (1968).

 Dean Wigmore summarized the rule reflected in the foregoing cases by the following language in his treatise:

> Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto.
>
> \* \* \* \* \* \*
>
> This intent must be sought where always intent must be sought, namely, in the *conduct and language* of the parties and the *surrounding circumstances*. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover.
>
> The conception of a writing as wholly and intrinsically self-determinative of the parties' intent to make it the sole memorial of one or seven or twenty-seven subjects of negotiation is an impossible one. 9 J. Wigmore, Evidence § 2431, at 98, 103 (3d ed. 1940).

We are in full accord with the view of the role of parol evidence expressed in these authorities.

In the instant case, the circumstances attending execution of the July 25, 1958 agreement reveal that the parties did not intend the written instrument to contain their entire understanding with respect to the transaction.

 Indeed, at the request of Technical's lawyer, the parties deliberately excluded Technical's promise to assume Reports' obligation to pay Youmans

$36,000 for future consultation services. In this regard, the record fully justifies the district judge's finding:

Prior to July 25, 1958, Kingsley L. Rice, the president and duly authorized representative of the defendant, had made and confirmed an oral promise directly to the plaintiff to assume and discharge the plaintiff's obligations to Youmans under the Consulting Agreement. This oral promise by the defendant constituted an undertaking independent of the obligations imposed on the defendant by the terms of the written asset purchase contract of July 25, 1958. The terms of this oral promise were expressly excluded from the written contract of July 25, 1958 at the insistence of the defendant for the purposes of avoiding possible adverse tax consequences to the defendant.

In sum, the circumstances surrounding execution of the written contract demonstrate that the parties did not fashion an instrument that contained all the terms of their agreement. For these reasons the district judge properly considered parol evidence in determining the contours of the understanding reached between the parties at the time Technical purchased Petroleum's assets from Reports.

In its cross-appeal, Reports contends that the district court should have allowed recovery of prejudgment interest on the $30,150 judgment for the period from satisfaction of the consent judgment in the New Jersey litigation on October 9, 1963 to the date of entry of judgment in the present case.

■ In diversity actions, federal courts look to state law to determine whether prejudgment interest is allowable. Holbrook v. Institutional Ins. Co., 369 F.2d 236, 242 (7th Cir.1966). The pertinent Illinois statute reads in part:

Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due * * * on money withheld by an unreasonable and vexatious delay of payment. Ill.Rev.Stat., ch. 74, § 2 (1967).

■ We believe the district court properly disallowed recovery of the interest. The record supports a conclusion that there was a genuine dispute between the parties and further that there was no bad faith on Technical's part in resisting payment of the New Jersey judgment.

The judgment of the district court is affirmed.