**JUNIKKI IMPORTS, INC., an Illinois corporation, Plaintiff,**

v.

**TOYOTA MOTOR CO., Ltd., a corporation et al., Defendants.**

**No. 69 C 1767.**

United States District Court,
N. D. Illinois, E. D.

Nov. 12, 1971.

Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff.

Irwin Zatz, Ralph A. Mantynband, Arvey Hodes & Mantynband, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
### Motion For Partial Summary Judgment

MAROVITZ, District Judge.

This is an action by an automobile dealer against a manufacturer and distributor for violation of the Automobile Dealers' Day in Court Act 15 U.S.C. §§ 1221, 1222 (Count I), Fraud and Deceit (Count II) and Breach of Contract (Count III). The case is presently before us on defendant's Mid-Southern Toyota Distributors, Inc. (MST) and Amco Industries, Inc. (AMCO) Motion For Partial Summary Judgment.

Plaintiff alleges that he was induced to establish a dealership of Toyota automobiles by oral promises on the part of defendants' representatives that he would be supplied with a) a minimum of 20 cars per month, the number of cars necessary to finance the dealership; b) all necessary parts and equipment for servicing and repair of Toyota automobiles; and c) substantial sums of money for advertising and that subsequently defendants decided to open a factory-owned dealership in the same area and thereupon entered upon a course of conduct designed to compel the cancellation of plaintiff's franchise. The acts of misconduct and bad faith alleged are the purposeful refusal of defendants to supply an adequate or minimum number of automobiles; the refusal to provide parts and equipment essential for repair and servicing of Toyota vehicles; further acts of coercion aimed at forcing the relinquishment of the Toyota Franchise; the compelling of plaintiff to join an advertising cooperative; the defendants' refusal to approve sale of the operation to a prospective purchaser though he was a party provided by defendants; and demand by defendants' that plaintiff sell to them stock and equipment below their value once plaintiff had ceased operations.

### I.

Plaintiff claims that the foregoing acts constitute a violation of 15

U.S.C. §§ 1221, 1222. Under § 1222 an automobile dealer may sue an automobile manufacturer for the failure to act in *good faith in performing or complying* with any of the terms or provisions of the franchise or in terminating, cancelling or not renewing the franchise. \* \* \* Defendants seek summary judgment arguing that the oral representations made prior to the signing of the franchise are irrelevant in determining good faith since all prior inducements or representations were negated by the subsequent written agreement. We will address ourselves at greater length to the question of what evidentiary value to place on the oral promises in discussing the breach of contract claims. For the purposes of this Count, however, it is sufficient to say that we have decided that the oral representations are a part of the contract and therefore defendants' violation thereof does constitute bad faith under the Act. Irrespective of these oral promises we believe that plaintiff has stated a sufficient cause of action under the Act. Plaintiff is simply alleging that defendants embarked on a concerted effort to put him out of business by purposely failing to provide an adequate number of cars needed to finance his dealership and by refusing to deliver parts for his service facilities. The fact that defendants did or did not promise a specific number of vehicles is totally irrelevant if they did in fact, by whatever method, intend to disenfranchise the plaintiff. The sum total of defendants' acts must be considered and prior negotiations and inducements even if negated by the written agreement are nevertheless of value in proving defendants' knowledge of plaintiff's minimal needs and its subsequent effort to undersupply those needs. With this knowledge defendants could easily further their alleged disenfranchisement scheme by consistently withholding the stock necessary to cover plaintiff's overhead. As we have indicated, *infra*, a distributor cannot claim that it can in bad faith refuse to supply autos or parts based on the absence of

any specific obligations or numbers in the written contract. He particularly cannot do so under the Automobile Dealers Day in Court Act which was enacted for the very purpose of preventing distributors and manufacturers from relying on their adhesion contracts and using bad faith in coercing dealers out of their franchises. It was to somewhat equalize the gross inequity in bargaining power that existed between dealers and manufacturers and to provide some safeguards from the disenfranchisement powers of distributors that the Act was legislated.

We therefore hold that the conduct alleged by plaintiff in Count I falls well within 15 U.S.C. § 1222 and that a cause of action having been sufficiently stated, defendants' motion as to this Count must be denied.

## II.

Plaintiff's Second Count realleges the oral promises of 20 cars a month, parts and tools, and advertising costs, and the breach of those promises. The basis for this Count is fraud and deceit. Defendants argue that summary judgment ought to be granted given the unquestionable fact that Illinois adheres to the minority rule which does not permit an action for fraud where the misrepresentations involved relate to an executory or future performance rather than to a past or existent fact even where the promise was never intended to be fulfilled. There is a multitude of both Federal and State cases that support this proposition. Keithly v. Mutual Life Ins. Co., 271 Ill. 584, 111 N.E. 503 (1916); Brodsky v. Frank, 342 Ill. 110, 173 N.E. 775 (1930); Classic Bowl Inc. v. AMF Pinspotters, Inc., 403 F.2d 463 (7th Cir. 1968); Repsold v. New York Life Insurance Co., 216 F.2d 479 (7th Cir. 1954).

Plaintiff does not dispute the Illinois rule but rather claims that where the false promises of future conduct are claimed to be the scheme used to accomplish the fraud there is an exception to the rule. See Howard v. Howe, 61 F.2d

577 (7th Cir. 1932); Carroll v. First National Bank of Lincolnwood, 413 F.2d 353 (7th Cir. 1969); Roda v. Berko, 401 Ill. 335, 81 N.E.2d 912 (1948); Willis v. Atkins, 412 Ill. 245, 106 N.E.2d 370 (1952). The court in Howard v. Howe said:

> "Nor can it be successfully maintained that fraud may not under any circumstances be based upon the nonperformance of promises. If such promises are made to induce the fraud, if they induce one to change his status to his damage, he may seek the relief of one defrauded. It is only essential that the evidence disclose that they were fraudulent in their inception, were made in bad faith, with the intention to deceive and were the inducing cause of the detrimental change in his condition made by the complaining party in reliance thereon." 61 F.2d at 579.

Likewise the court in Carroll said:

> "The general rule in Illinois denies recovery for fraud based on a false representation of intention or future conduct, but there is a well recognized exception, where, as here, the false promise or representation of future conduct is claimed to be the scheme used to accomplish the fraud." 413 F.2d at 358–359.

Assuming the allegations to be true for the purposes of this Motion it is not sufficiently evident that plaintiff will not be able to prove that the promises were themselves a part of the scheme used to accomplish the fraud and we therefore are not prepared at this juncture to grant defendants' Motion For Summary Judgment.

### III

The final count realleges that the oral representations as to the number of automobiles promised per month, the parts and tools to be supplied and the advertising costs to be covered and claims a breach thereof based on the same subsequent developments illustrated in the first two counts.

Defendants seek summary judgments on the grounds that the written franchise agreement is a fully integrated contract specifically providing that all prior agreements are superseded and terminated, that the contract contains exculpatory clauses for failure to deliver, that there is no obligation on Distributor's part to supply any automobiles or parts and that the contract specifically requires Dealer to pay advertising costs. Plaintiff would have us consider the oral representations in resolving the ambiguities of the contract given the fact that the prior promises do not contradict the provisions of the written franchise agreement.

We must therefore first examine the specific provisions of the written contract before we can determine what evidentiary value, if any, can be placed on the oral representations.

First, if the claimed exculpatory clause is valid to the extent claimed by defendants then plaintiff will have waived his right to sue for failure of delivery of parts and automobiles. Article II Section 2 of the agreement states:

> "Distribution shall not be liable for failure to fill orders or for delay in making delivery *where such delivery is beyond the control of Distributor.* * * * [the provision then lists various contingencies such as strikes and lockouts] Dealer hereby releases and discharges Distributor from any and all liability and from any and all damages and losses arising from the failure of Distributor to fill any orders placed *hereunder* or from the delay in the delivery of any products ordered by Dealer *hereunder*. [Emphasis added.]

■ Distributor would have us interpret this as a blanket exculpatory clause. However, viewing section 2 as a whole it seems fairly clear that liability is waived *only* where failure or delay in delivery *"is beyond the control of Distributor"*. The entire section is permeated with the language of unavoidable and uncontrollable conditions. Surely

it cannot be construed to discharge liability where the Distributor fails to deliver as part of a scheme aimed at putting the Dealer out of business.

Having determined that no exculpatory clause exists to cover the acts alleged by plaintiff we must then decide whether there are any obligations on Distributor's part even absent the oral representations. We believe that it would do violence to the contract to interpret it as placing enormous obligation on Dealer's part with absolutely no *quid pro quo* from Distributor.

Defendants further claim that they were under no obligation to supply plaintiff with any autos or parts.

Article II, section 1 of the agreement provides that "Distributor may accept in whole or in part" any of the Dealer's orders for Toyota products. If this clause is taken as a carte blanche for the Distributor to do as it pleases the Dealer would be at the complete mercy of the Distributor and the Franchise Agreement would be worthless. Undoubtedly, when the Dealer signed this Agreement he did so with the belief that "good faith" would be used in accepting or declining an order and surely this provision does not mean that the Distributor can arbitrarily decline orders or that he can in bad faith refuse orders with the intention of eliminating the Dealer from the market. The clause must therefore be viewed as intending a good faith effort by both parties to meet their respective obligations under the contract.

Article IX of the agreement states:

"Dealer agrees to purchase and at all times to maintain at least a minimum inventory of Toyota vehicles and Toyota parts in accordance with Distributor's reasonable requirements from time to time, subject however, to Distributor's ability to supply such vehicles and parts."

There is no indication from this provision as to what Distributor's reasonable requirements are but what is evident is that the reciprocal of Dealer's obligation to maintain a minimum inventory is the Distributor's obligation to supply him with that inventory unless it is unable to do so. The entire language of the contract contemplates reciprocal obligations, as does any contract entered into good faith, and surely a dealer entering into an automobile franchise contract contemplates that he will in good faith be supplied with parts and autos.

Defendants further cite Article XI as being unequivocally dispositive of plaintiff's claim for advertising costs. "Dealer shall advertise Toyota products only in accordance with directives and suggestions of Distributor. * * * "

There is nothing in this provision that indicates who is to bear the costs of this advertising. The defendants cite the deposition taken from Morton Edidin, president of plaintiff, to the effect that Mr. Edidin requested $500.00 for advertising for pre-opening advertising costs, which he received. Rather than benefit defendants this statement indicates that some advertising costs were assumed by the Distributor leaving open the question as to how much of an obligation defendants took upon themselves.

Thus we are left with a franchise agreement with certain ambiguities. When the plaintiff signed the agreement, common business sense dictates that a certain number of vehicles per month must have been contemplated. That number is not evident from anywhere in the agreement. Surely the Dealer would not have signed the agreement if the Distributor had said "We will supply you with one car a month and no more." To enter into such an agreement would be tantamount to signing himself into bankruptcy. By the same token if twenty cars per month is necessary to finance the dealership and the defendants were aware of this minimum need, the agreement in good faith must have contemplated that amount.

How then do we determine those elements which are not clearly defined in the contract? We might look at surrounding circumstances, at custom and

usage in the automobile trade and at the oral representations.

The franchise agreement does indeed contain the typical boilerplate phrase as to the integration into the written document of all prior inducements and representations. But in interpreting and construing the contract we must give effect to the intentions of the parties. In Reports Corporation v. Technical Publishing Co., 411 F.2d 168 (7th Cir. 1969) the defendant argued that under Illinois law when a written agreement purports on its face to be a complete expression of the whole agreement between the parties, parol evidence will not be permitted to add terms to the agreement. The defendant in that case supported its contentions with Armstrong Paint & Varnish Works v. Continental Can Company, 301 Ill. 102, 133 N.E. 711 (1921) the same case relied on by defendant in the present action. The Court of Appeals nevertheless held:

"It is fundamental that a valid contract may be partly written and partly oral and that if the parties do not intend to reduce the entire contract to writing, the unwritten contractual terms may be proved by parol evidence.

"The initial question for determination is whether the written instrument was intended to be a complete and integrated statement of the entire transaction between the parties. Technical argues that this question can be resolved by looking at the written instrument. It maintains that under Illinois law when a written agreement purports on its face to be a complete expression of the whole agreement between the parties, parol evidence will not be permitted to add to the terms of the agreement, even though the writing contains nothing on the subject to which the parol evidence is directed. Technical fortifies its argument with reference to the decisions in Armstrong Paint & Varnish Works v. Continental Can Co., 301 Ill. 102, 133 N.E. 711 (1921), and Telluride Power Transmission Co. v. Crane Co., 208 Ill. 218, 70 N.E. 319 (1904).

"Although the test suggested by Technical is supported by the cited cases, it carries an essential qualification perhaps best embodied in the following language of the Illinois Supreme Court in Fuchs & Lang Mfg. Co. v. R. J. Kittredge & Co., 242 Ill. 88, 89 N.E. 723, 725 (1909):

" 'The [parol evidence] rule is a familiar one, but it is subject to the qualification that a separate parol agreement as to any matter not inconsistent with the terms or legal effect of the written agreement, and on which it is silent, may be shown, where it appears that the written instrument was not intended to be a complete and final statement of the whole transaction between the parties. [Authorities omitted.] Whether the letter in question was intended by the parties as a complete and final statement of the whole agreement between them was a question to be determined by the court from the circumstances of the case.' " 411 F.2d at 171–172.

The oral representations in our case do not conflict with the written contract and thus can be used to elaborate on the agreement. What must be kept in mind is that plaintiff is not claiming some extraordinary obligations on defendant's part or attempting to superimpose some incongruous gloss on the contract but rather is attempting to define the barest practical conditions under which a contract could exist. This is quite unlike Southern Rambler Sales Inc. v. American Motors Corporation, 375 F. 2d 932 (5th Cir. 1967) cited by defendant where the dealer claimed an exclusive franchise, an element not basic to the contract, despite the fact that the agreement specifically provided that the franchise was non-exclusive. Plaintiff is not claiming that he should have been supplied with 500 or 200 cars a month or a ten-year supply of parts. He is asserting a claim for the minimum basics that a dealer must have to survive; for the very essentials whose absence would make the contract a total sham. These items are so fundamental that they are

understood for without them one would be foolish to enter into an agreement and the fact that the minimum number of cars needed to finance the dealership or that a supply of parts would be necessary does not appear in the written agreement, does not prevent us from determining those elements by way of the prior representations.

Given the fact that plaintiff could conceivably prove the breach of these prior representation we must deny defendants' motion for Summary Judgment.

The Motion for Partial Summary Judgment as to all Counts is hereby denied.