68 F.3d 474
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lucinda Marterson HALL, Trustee in Possession for William F.
Davis and W.F. Davis Motor Company, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY and Ford Motor Credit Company,
Defendants-Appellees.
 No. 94-3885.
 United States Court of Appeals, Sixth Circuit.
 Oct. 20, 1995.
 
 Before: MILBURN and NELSON, Circuit Judges, and MORTON, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment for the defendants in an action brought against Ford Motor Company and a subsidiary by the trustee in bankruptcy of the operators of a Ford dealership. The plaintiff contends that the district court misconstrued the federal and state automobile dealer legislation under which relief was sought, and she contends that summary judgment was inappropriate because of the existence of genuine issues of material fact. We do not find these contentions persuasive, and we shall affirm the judgement entered by the district court.
 
 
 2
 * W.F. Davis Motor Company was an authorized Ford dealer in Whitesburg, Kentucky, from June 1984 until it filed for bankruptcy in December of 1990. On July 1, 1990, a new Ford dealership, Freedom Ford Lincoln-Mercury, opened in Wise, Virginia, approximately 20 miles from the Davis facility. Freedom Ford was established under Ford's "dealer development" program, a program often used to encourage ownership of Ford dealerships by members of a minority race. Ford initially owns all of the stock in the dealership, under this program, and ownership of the stock is transferred to the operators as the profits of the business warrant. This lawsuit challenges the legality of Ford's operation of Freedom Ford in competition with Davis. The plaintiff also contends that Ford violated state and federal law in various facets of its dealings with Davis over the course of the years.
 
 II
 
 3
 The Automobile Dealer Day in Court Act, 15 U.S.C. Secs.1221 et seq., authorizes dealer suits against manufacturers to recover damages sustained by reason of the manufacturer's failure to act in good faith in performing the terms of the franchise. The Act defines good faith in terms of a duty "to act in a fair and equitable manner ... so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party ...."
 
 
 4
 Given this specialized definition of "good faith," a dealer can succeed in a claim under the Act only by proving that it sustained damages as a result of coercion or intimidation by the manufacturer. See Fray Chevrolet Sales, Inc. v. General Motors Corp., 536 F.2d 683, 685 (6th Cir. 1976), a case that still represents the law of this circuit. And "[c]oercion or intimidation must include 'a wrongful demand which will result in sanctions if not complied with."' Fray, 536 F.2d at 685, quoting Ship & Shore Motors, Inc. v. British Leyland Motors, Inc., 74-1 CCH Trade Cas. p75,102 (D.N.J. 1974).
 
 
 5
 Upon de novo review of the record in the case before us, we are satisfied that there is no basis on which a jury could properly be permitted to find that Davis suffered damages from any such "wrongful demand." None of the arguments advanced by the plaintiff in this regard is meritorious.
 
 
 6
 The plaintiff argues, among other things, that Ford violated the Act in 1985 by withholding credit for the purchase of new cars until Davis increased the dealership's operating capital by $40,000. But the demand for an infusion of new capital was not "wrongful," under the contractual arrangement between the parties; Ford reserved the right to determine "in its sole discretion" the terms and conditions on which credit would be extended. Moreover, the events in question occurred outside the three-year limitations period prescribed by 15 U.S.C. Sec.1223.
 
 
 7
 The plaintiff further argues that Ford wrongfully demanded that Davis move to a new facility. As explained by the district court, however, Davis acknowledged that the existing facility did not meet the requirements of the franchise agreement. The plaintiff has not pointed to evidence that could support either a finding that Ford waived the right to demand that Davis move or a finding that Davis sustained damages by reason of Ford's actions.
 
 
 8
 There was one occasion, it appears, when Ford demanded that Davis accept delivery of an unwanted vehicle as a condition to receiving a certain truck that had been ordered. The plaintiff alleges further that Ford coerced Davis into taking extended service policies by threatening not to honor borderline warranty claims. In neither situation, however, has the plaintiff shown that Davis sustained damages. Davis received the ordered truck without taking delivery of the unwanted vehicle, and there has been no showing that Davis lost money on the extended service policies.
 
 
 9
 The plaintiff complains that Ford was guilty of bad faith in placing limits on the number of cars it would ship to Davis. Cited in this connection are cases holding that allocation limits may constitute bad faith when the facts indicate an intent to drive the dealer out of business. Fox Motors, Inc. v. Mazda Distribs. (Gulf), Inc., 806 F.2d 953, 961 (10th Cir. 1986); Randy's Studebaker Sales, Inc. v. Nissan Motor Corp., 533 F.2d 510, 516 (10th Cir. 1976); Junikki Imports, Inc. v. Toyota Motor Co., 335 F. Supp. 593, 595 (N.D. Ill. 1971). These cases are not apposite here, because the plaintiff has pointed to nothing from which a jury could properly infer that Ford sought to put Davis out of business.
 
 III
 
 10
 The Kentucky Motor Vehicle Sales Act, KRS 190.010 et seq., contains a provision making it unlawful for a manufacturer to "compete without good faith" with one of its franchised dealers. KRS 190.070(2)(i). The plaintiff contends that Ford competed with Davis unlawfully through Freedom Ford.
 
 
 11
 The short answer to this contention is that under the statute a manufacturer is not deemed to be competing when operating a dealership "temporarily for a reasonable period ...." Id. Freedom Ford, which competed with Davis for less than six months, was clearly operated by Ford "temporarily for a reasonable period" -- and we hold that it would have been wrong to let a jury find otherwise. This holding makes it unnecessary for us to address the question whether it would be constitutional for Kentucky to prohibit Ford from competing with Davis through a dealership located outside Kentucky.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The Honorable L. Clure Morton, United States District Judge for the Middle District of Tennessee, sitting by designation